ALFRED PETERSON v. THE CHICAGO & NORTH WESTERN RAILWAY COMPANY.

*Negligence—Duty of railroad company as to protection of car-inspectors and repair-men—Injury from negligence of fellow-employe.*

1. By the rule of a railway company, car-inspectors and repair-men were required, before going under or between any cars to inspect or repair the same, to display a red signal at the end of the car or cars in the direction from which a train or engine could approach, which signal they must provide themselves with, and have on hand at all times for use, the same being obtainable from the foreman; and all train men were required to carefully observe this signal, and under no circumstances back against or couple on to any car while such signal was displayed.

   *Held*, that this rule, if enforced, was sufficient for the protection of car-inspectors and repair-men, and that with such rule in existence, and with instructions to all employes to observe it, the railway company was not guilty of negligence in not having a watchman or "bumpers," nor in running other cars upon the same track where cars were being repaired, when space was left between them, and the red flag respected according to the rule.

2. The negligence of fellow-employes is not chargeable to the employer, unless they are incompetent in such sense as to charge the employer with the results of their negligence.

Error to Marquette.   (Grant, J.)   Argued July 5, 1887. Decided October 6, 1887.

Case.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*Hayden & Young,* for appellant.

*A. B. Eldredge,* for defendant.

MORSE, J.  The plaintiff is a native of Sweden, and on the sixth day of June, 1884, the date he was injured, was about 26 years of age.  He was employed by the defendant as a car-repairer, and worked in such employment for it from five to six weeks before he was hurt.  He was hired by one Matthews, who was the boss carpenter of the defendant.  Matthews directed him to report to John Carlson, who was foreman of a gang of car-repairers.  He was told that Carlson would show him what to do.  He had never worked at car-repairing or any other labor about railroads before.  He had been in this country less than two years, and understood but little of the English language.

Upon his reporting to Carlson, he was given a tool-box, and set to work repairing cars; putting in bolts, plates, and the like items of repair.  He testifies that the only instructions or warning given him as to the danger of his occupation was that he should never go under the cars "when the red flag was not on."

The accident which occasioned the injury for which the plaintiff seeks to recover damages in this suit occurred in the lower yard of the defendant at Escanaba, where are located the ore-docks, from which the iron ore mined near there is loaded into vessels.  There were in this yard 10 tracks, all of which were used more or less as repair tracks.  The method of doing business in the yard was substantially as follows:  After the loaded cars had been run down from the docks, they were switched onto side tracks, and were then inspected by the repairers.  The cars that were too much damaged to be repaired upon the tracks were marked " B. O."

(meaning bad order), and were removed to the shops before the train started out. The others needing repair were attended to while standing on the repair tracks.

These same tracks were also used for making up trains. The repair-men were furnished with red flags, one of which was to be placed at the head of the train looking towards the switch, and train-men were instructed in no case to run cars or engines against such cars, as the signal of the red flag so placed indicated that such cars were undergoing repair upon the track.

There were two repair yards; one called the upper, and the other the lower, yard. The foreman of both yards was Thomas Leith. In his absence John Carlson was boss of the lower yard.

On the day of the injury from 30 to 35 cars were run in from the ore-docks upon one of these tracks, known as track No. 4. They were backed in from the north, and had at their south and rear end a caboose. Peterson had been at work all day, commencing at 7 o'clock in the morning. The car-repairers, including plaintiff, about 3 o'clock in the afternoon had just completed repairing cars on a train standing upon another track, when Carlson said, " Come on, boys," and led the men to the cars on track No. 4. He said, "Boys, hurry up now; we have to leave in half an hour;" and put a red flag up on the front car of those then being on the track. The men went to work at once, and as fast as they could. Peterson finished his work on one car, and passed by Carlson, who was fixing a brake-beam on one of the cars, and went to work on another car. He was sitting on the ground under the car, fastening the nuts upon some bolts.

While the men were thus engaged upon these cars, another train, consisting of 30 or 35 cars, was backed down upon this same track, within from one to six car-lengths of the train being repaired. Carlson knew of this, but did not move or change the flag. He swears that Leith, the other foreman,

and one Oscar Strom, had gone ahead, and he supposed that they had moved the flag to the front end of the last train, or would do so; therefore he kept on at work, and paid no attention to the matter. The flag was not changed.

While these two sections were standing on this track, Oscar Strom, a car-repairer, and one of the gang under Carlson and Leith, passed along the section last placed upon the track, and inspected the cars. He marked one "B. O." (bad order). This car was about the sixth one from the front end of the section. Sylvester Geiger, a brakeman, going out that day, came through the yard, and, seeing this B. O. car, pulled the pin connecting it with the rear cars. He spoke to Murray, the yard-master, about it, and Murray ordered the switch-engine to take this car out. One Farnum, who was not a witness upon the trial, was running the switch-engine. He attached the engine to the first section, and ran the detached cars out upon another track, and the B. O. car was "kicked" upon it. He then ran the remaining five cars back upon track No. 4. As soon as he did this, he detached the engine from them. Geiger was on top of the cars, and supposed the engine was still attached to them. When he got near the rest of the section, to which he intended to couple these cars, he gave a signal for the engine to slow up. Discovering that the engine was not attached, when within about two car-lengths of the section, he jumped off and ran ahead to make the coupling. He testifies:

"They [the cars] just about got up with me,—they don't run very fast,—kept just about up with me; then somebody halloed at me to get out, and I was kind of scared, so I got out, and lost the coupling, and they struck, and run the others down against the 30 cars these car-repairers were working under."

Without any warning to plaintiff, the car which he was under lunged back over him, dragging him on his back across

his tool-chest, injuring his shoulder and spine, from which injury he claims a probable permanent disability.

The testimony shows that it was not the duty of the plaintiff to move this flag, and he had been forbidden to touch it. The men having properly the charge of it were Leith and Carlson.

No one else was authorized to touch it except by their order.

In the plaintiff's declaration the causes of negligence upon the part of the defendant were alleged as follows:

1. That defendant should have provided a watchman to warn plaintiff of the movement of the cars, and notify other employés of his whereabouts.

2. That a proper signal flag should have been used to give notice of his presence under the cars.

3. That the cars under which he was working should have been "locked," or placed against a "bumper," or stationary post.

4. That defendant neglected to provide such watchman, flag, or bumper.

5. That defendant neglected all reasonable means to prevent the movement of the cars while plaintiff was at work under them.

6. Defendant negligently required the cars to be repaired on an open track, upon which engines or cars might be run while plaintiff was at work.

7. And negligently exposed plaintiff to the risk from the movement of the cars.

8. That while plaintiff was under the cars, and in the absence of such precautions, without any warning to him, defendant wrongfully caused a number of cars to be pushed in upon the track where plaintiff was at work, by locomotive power, at a high rate of speed, unattached to the locomotive, and insufficiently provided with brakemen.

The proof showed that no watchman or bumpers were provided, and no signal used except the red flag, which would undoubtedly have answered the purposes of a sufficient signal had it been removed to the front end of the section last run upon the track.

Upon the conclusion of the testimony, the circuit judge directed a verdict for the defendant, holding—

1. That the injury was caused by the neglect of Carlson or Leith to remove the flag from the rear section, and place it at the head of the front section of the cars upon the track.

2. From the neglect of the switchman, Farnum, to perform his duty; that he had no business or right to uncouple the cars from the engine as he did.

He then ruled that, inasmuch as there was no evidence offered or claim made that either Carlson, Leith, or Farnum were incompetent, the plaintiff could not recover, because all these parties were, in law, fellow-employés with the plaintiff.

It is claimed by the counsel for the plaintiff that it was negligence on the part of the defendant to run the last section of cars upon the track while the others were being repaired, and had the signal flag at the front of them; that the evidence shows it was their custom to do so, the only instructions being to leave space between the cars being repaired; and that the plaintiff had a right to go to the jury upon this question.

His counsel assert that the primary cause of the injury was the existence of the rule or custom to permit encroachments upon the track, or a want of sufficiently definite rules to govern the use of the signal flag, or both combined.

The testimony shows that the following rule was in force, and had been for some time before the accident. There was a dispute in the testimony as to whether or not notices of this rule were posted up while plaintiff was in the employ of defendant. But there is no question from the record but the instructions of the defendant were that the red flag should be placed at the front end of the cars on the repairing track, and that in no event should any train be run against cars having such flag upon them.

The following is a copy of said notice:

"Chicago & Northwestern Railway Company,
     "Office of the General Superintendent.
          "*General Notice.*
               "Chicago, October 27, 1881.

"Hereafter it is made the duty of all car-inspectors and repair-men, before they go under or between any cars to inspect or repair the same, to have first displayed a red signal on the end of car or cars in the direction from which a train or engine could approach.

"All train men must carefully observe this notice, and under no circumstances must they back against or couple onto any car while such signal is displayed.

"Car repair-men and car-inspectors must provide themselves with such signal, which can be obtained from their foreman, and have them on hand at all times for use."

I think it must be considered that this rule, if enforced, was adequately sufficient for the protection of plaintiff, and the men working at the same employment. A similar method of protection is adopted by other roads, and has in one case been judicially determined to be "a very efficient rule, and, if faithfully and carefully observed, would give reasonable protection to repair-men." *Abel v. President, etc.,* 103 N. Y. 586 (9 N. E. Rep. 325).

With this rule in existence, and with instructions to all employés to observe it, it was not, in my opinion, negligence on the part of the defendant in not having a watchman or "bumpers;" nor was it negligent to run other cars upon the same track where cars were being repaired, when space was left between them, and the red flag was respected according to the rule.

While the negligence of Farnum, in detaching the engine from the cars used in "kicking" the B. O. car upon the main track, had something to do with causing the accident, the real neglect which was the main cause of the injury was the failure of the foremen, or one of them, to remove the flag, and place it at the head of the front section of the cars upon the repair track. If this had been done, none of the cars would have been moved while plaintiff or any of the men

were at work repairing the cars, if the rules of the defendant had been obeyed.

As stated by the circuit judge, there could be no claim from the record that either Farnum, Leith, or Carlson were incompetent men in such sense as to charge defendant with the results of their negligence. If the question were an open one in this State, I should not be inclined to hold that either of these persons was a fellow-employé of the plaintiff. But the law in this respect is well settled in this State, and the circuit judge followed the decisions of this Court, citing them in his charge to the jury. See *Railroad Co. v. Dolan,* 32 Mich. 510; *Smith v. Potter,* 46 Id. 258; *Railroad Co. v. Austin,* 40 Id. 247; *Mining Co. v. Kitts,* 42 Id. 34; *Greenwald v. Railroad Co.* 49 Id. 197; *Gardner v. Railroad Co.,* 58 Id. 584; *Hoar v. Merritt,* 62 Id. 386.

Under the plaintiff's evidence, and the other undisputed facts in the record, and the law applicable to the same, the judgment of the court below must be affirmed.

The other Justices concurred.