EAST TENNESSEE, VIRGINIA & GEORGIA RAILROAD COM-
PANY *v.* DEARMOND.

*(Knoxville.* October 26th, 1887.)

1. MASTER AND SERVANT. *"Fellow-servant" doctrine. Limitations.*

Ordinarily *fellow-servants* assume the risks incident to each other's neg-
ligence, but in Tennessee, where servants of the same master are
engaged in *different departments* of a common service, or one is the
*superior* of another in the same department, either temporarily or per-
manently, they are not *fellow-servants* within the meaning of this rule.

Cases cited and approved: Haynes *v.* Railroad, 3 Cold., 222; Railroad
*v.* Carroll, 6 Heis., 347; Iron Co. *v.* Dodson, 7 Lea, 367; Railroad *v.*
Wheless, 10 Lea, 741; Railroad *v.* Collins, 85 Tenn., 227; 112 U.
S., 377.

(See Railroad Co. *v.* Lahr, *post,* p. —.)

2. SAME. *Same. Telegraph operator and conductor are not fellow-servants.*

Hence, a telegraph operator at a way-station, who has no control of or
connection with the running of railway trains, except as a medium
through which orders from the superintendent's office are communi-
cated to servants of the company in charge of its trains, is not the
*fellow-servant* of a conductor having charge and control of a railway
train, in the sense that the latter assumes risks for injuries caused by
the former's negligence.

The operator is, in such case, not only engaged in a *different de-
partment* of the common service, but, as the arm or mouth-piece of
the superintendent of trains, is, in a sense, a vice-principal and the
conductor's *superior.*

Cases cited and approved: 81 N. C., 446; 12 Am. & Eng. Railroad
Cases, 228; 25 N. W. Rep., 544; 24 Am. Law Reg. (N. S.), 452; 91
N. Y., 332.

3. SAME. *Contributory negligence. "Prime and proximate cause." Miti-
gation.*

Where a telegraph operator at a way-station negligently delivered to
the conductor of a train an order that did not concern his train, in-
stead of a dispatch from the superintendent directing him to hold his
train at that station until another train should pass, whereby a col-

lision occurred and consequent injuries to the conductor, there was contributory negligence on the part of the conductor in accepting the meaningless order, without inquiry, which should mitigate his damages; but the *prime and proximate cause* of his injury was the operator's negligence.

(See Knoxville Iron Co. *v.* Smith, *ante*, p. 45.)

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. S. A. ROGERS, J.

W. M. BAXTER and HENDERSON & JOUROLMON for Railroad Company.

WILLIAMS & SNEED for, DEARMOND.

FOLKES, J. DeArmond was a conductor on a freight train of the East Tennessee, Virginia & Georgia Railroad Company, and while so employed was injured in a collision occurring between the train under his charge, going west, and another freight train going east. This action was against the railroad company for damages. There was verdict and judgment in favor of DeArmond. Motion for new trial overruled, and the railroad company has appealed in error.

The only error assigned, which it is deemed necessary to notice, presents the question as to whether the telegraph operator, whose negligence caused the accident, was a fellow-servant of the

Railroad Company *v.* DeArmond.

conductor, whose negligence was one of the risks assumed by the latter in entering the service of the company.

The record shows that the superintendent, through the train despatcher, had sent a telegram to one Brevord, the operator in the office at Cleveland, in the employ of the railroad company, directing that the train in charge of DeArmond be held at Cleveland until No. 8 freight should reach that point. These trains, when on schedule time, passed at McDonald's, eight miles west of Cleveland. No. 8 had been telegraphed not to wait at McDonald's for the second section of No. 7 (the train in charge of DeArmond), but to come on at once to Cleveland; and, as already stated, a telegram was sent to have DeArmond's train held at Cleveland.

It appears from the proof that the rules of the company required a telegraph operator, when he had orders for conductors, to exhibit, at some conspicuous and designated place, a red flag by day and a red lamp by night; and conductors, upon seeing such signal, were to go at once to the telegraph office for instructions.

On the night upon which this accident happened there was a red light exhibited by the telegraph operator, but it was not upon the post where it was usually hung; it was sitting on the platform. Its location, however, is deemed by us as immaterial, for the reason that it served the purpose of arresting the attention of DeArmond, and in consequence thereof he went to the tele-

graph office of the company and asked if there were any orders for him, and the operator handed him a telegram to the effect that "all cut-off trains have passed Ooltewah on time," and said: "This is all I have got." DeArmond, under a rule of the company requiring conductors to report to operators the time of leaving a station, so that it can be forwarded to the train despatcher's office, thereupon gave Brevord the time of his intended departure, then a few moments off, and left to move his train out.

DeArmond was running on schedule, a printed copy of which is in the hands of each conductor, and is his guide in moving his train, except where special orders are given by telegram.

The telegram as to cut-off trains at Ooltewah did not interfere with nor concern the movements of DeArmond's train, and the operator failing to call his attention to the telegram ordering his train to be held at Cleveland, DeArmond at once moved out with his train, intending to meet and pass No. 8 at McDonald's, the point of passage on the regular schedule, by which DeArmond was running. A collision was the result, and DeArmond received the injuries for which this suit was brought.

After stating the law correctly as to fellow-servants, and the non-liability of the company if they should find that relationship, as modified and defined in our adjudged cases, the Court, in its charge to the jury, said: "On the other hand, if you find DeArmond was conductor; that he had

Railroad Company *v.* DeArmond.

a full crew of hands with him for the management of his train; that Brevord, as telegraph operator, had nothing to do with the actual management or movements of the train; that his connection was alone with Garrett, as the immediate superior of plaintiff, in the matter of furnishing orders and directions for the instruction and control of DeArmond in his business as conductor; and that, in point of fact, his employment did not associate him with DeArmond in the control and management of his train, then, in such case, DeArmond and Brevord are not, in legal contemplation, in the same department of the common employer, and are not fellow-servants; and if you so find, I charge you that the risk of injury from negligence on the part of Brevord is not such a risk as the law places upon DeArmond by reason of his employment as conductor." The language quoted is assigned as error by the railroad company.

We are of opinion there is nothing in it of which the railroad can complain. Stripped of some unnecessary words, and taken in connection with other portions of the charge not excepted to, it is a correct statement of the law under the qualifications of the rule adopted and adhered to by this Court. It is with us well settled, whatever may be the rule in other States, that the servant does not assume the risk of the negligence of another servant, where the latter is engaged in a different department of the work or service; as, for in-

stance, the train crew do not take the risk of the negligence of the track or section hands; nor where the negligent servant is the superior (permanently or temporarily) of the injured one, having authority to direct or control the latter, does the rule apply. *Haynes* v. *E. T. & Ga. R. R.*, 3 Cold., 222; *N. & C. R. R. Co.* v. *Carroll*, 6 Heis., 347; *Iron Company* v. *Dodson*, 7 Lea, 367; *N. & C. R. R. Co.* v. *Wheless*, 10 Lea, 741; *E. T. & W. N. C. R. R.* v. *Collins*, 85 Tenn., 227; and others might be cited. See, also, *Chicago* v. *Ross*, 112 U. S., 377.

Under the proof in the case at bar, indeed from the lips of the superintendent, T. W. Garrett, we have it, that "the telegraph operator is the agent through which we transmit orders from the superintendent's office for the movement of trains; he merely receives and conveys—he is the medium, or the mouthpiece, for the transmission of orders from this office to the trainmen or person in charge of the train."

It is manifest that the operator is not in the same department with the trainmen, nor engaged in the same branch of the common employer's service. And while he may not be said to be *in person* the superior of the trainmen to whom he delivers orders, as he, of his own motion, has no right or power to issue orders, he is in a sense the superior, for he is the arm or mouthpiece of the train despatcher or superintendent—in a qualified degree, a vice-principal.

It is immaterial that these men are hired and paid by a common employer, and that they are engaged in the effort to accomplish a common result, to wit, the movement of trains. That argument, if pressed to its logical conclusion, would obliterate all distinctions among those engaged in railroad business, from the president down to the humblest servant, and would practically exempt the company from all liability to those in its service.

It may be interesting to mention that the modifications of the common law rules, as to the liability of master for negligence of a fellow-servant, which have been adopted by the decisions in this State, are the same in principle as those since embodied in the "Employer's Liability Act" passed by the English Parliament in 1880; so that the decisions of the English courts, which we refused to follow, have since been abrogated by the English statute.

It was said by the Supreme Court of North Carolina in a recent case: "No definition of the term 'fellow-servant,' applicable to all cases, had yet been adopted in this country by the courts, and probably could not be. So variant were the relations between master and servants in different employments, and so close the line of demarcation between co-laborers and middlemen, that each case would have to stand upon its own facts." *Dobbin* v. *Railroad*, 81 N. C., 446.

Where there is any controversy as to the facts, the question is one for the jury, upon a proper

---

---

charge of the Court. See *I. & St. L. R. R.* v. *Morgenstern*, 12 Am. and Eng. Railroad Cases, 228 (Illinois case).

That a train despatcher is not a fellow-servant with a brakeman, has been adjudged by the Supreme Court of Wisconsin. *Phillips* v. *Chicago R'y Co.*, 25 N. W. Rep., 544.

To the same effect is *Dorrigan* v. *N. Y. & N. E. R'y Co.*, from the Supreme Court of Connecticut, reported in 24 Am. Law Reg. (N. S.), p. 452; as also in *Sheehan* v. *N. Y. C. & H. R. Rd.*, 91 N. Y., 332, where a train despatcher is held not to be a fellow-servant with any of the train crew.

So it will be seen that we are not by any means alone in the conclusion to which our own decisions necessarily lead us in this case.

We deem it unnecessary to notice at length the insistance of counsel for plaintiff in error that De-Armond was guilty of gross negligence in contenting himself with the inspection of a telegram that upon its face did not concern the movements of his train, and in moving on after he saw the red light until he had received something more definite from the telegraph operator, and that he was also negligent in the rate of speed at which he was running at the time of the collision. It is sufficient to say that at most he was guilty only of contributory negligence, which has been properly considered by the jury in abating the amount of the recovery, as is shown by the verdict, which is only for $300.

The negligence of the telegraph operator in not delivering the proper orders was the prime and proximate cause of the injury beyond all question. Let the judgment be affirmed.