CALVIN B. DEWEY v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Railroad companies—Injury to brakeman—Negligence of inspector —Fellow-servants.*

1. A brakeman on a freight train, and a car inspector, charged by the common employer with the duty of inspecting cars received from other companies for transportation, and to see

97 329
98 138
97 329
103 209
103 212
103 222
97 329
106 613
97 329
107 595
107 605
108 11
97 329
114 86
97 329
120 628
97 329
123 376
97 329
124 39
f124 41
97 329
140 1451
97 329
154 429

that they are properly loaded and in good condition, are fellow-servants.

2. Where a railroad company furnishes safe cars and a competent car inspector, it is not liable to a brakeman for injuries received while attempting to couple a properly constructed car, which has been accepted by the inspector from another company for transportation, onto another car, by reason of the projection over the end of the car so inspected of a portion of the lumber with wh'ch it is laden.

Error to Wayne. (Gartner, J.) Argued April 12, 1892, and reargued April 11 and 12, 1893. Decided November 10, 1893.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the majority opinion.

[Upon the original hearing, opinions were handed down July 28, 1892, the majority of the Court favoring reversal of the judgment below. A rehearing having been granted upon the application of defendant, the opinions were withheld from publication, and will be found reported at the end of this case.]

*Dickinson, Thurber & Stevenson,* for appellant.

*E. W. Meddaugh,* for defendant.

LONG, J. October 21, 1890, the defendant received at Holly from the Flint & Pere Marquette Railroad Company a car loaded with lumber, for the purpose of transporting it to the Lake Shore & Michigan Southern Junction, in Wayne county, at which point it was to be placed upon the line of the Wabash transfer track. The plaintiff was in the employ of the defendant as a brakeman, and serving on the train in that capacity. He had worked for the company about one year. The train reached the Lake Shore & Michigan Southern Junction about 2 o'clock in the morning, and the car was run upon the Wabash transfer track. It became necessary to couple the car to

a flat car on the transfer. For the purpose of doing this, the flat car was backed up by the engine to the loaded car. The plaintiff stepped in between to make the coupling, when his body was caught between the two cars. In his struggle to release himself his right hand and the lower portion of his right arm were crushed between the bumpers and the drawheads of the cars, and so mangled as to necessitate amputation. It appears that the lumber upon the car received at Holly projected at the bottom, at one end, beyond the platform of the car for four or five inches, and a distance upwards of a few tiers only. This projection of lumber decreased the distance between the cars, and by it the plaintiff was caught as the cars came together. He claims to have had no knowledge that this lumber projected until the moment he was caught by it. It was a dark night, and he claims he could not see, even though he carried a lantern at the time.

The declaration contained five counts. Plaintiff's counsel claim that his demand is founded upon several distinct theories, all involving negligence on the part of the defendant:

1. That he was injured by reason of the defective construction of defendant's flat car, which allowed the two cars to come so close together that he was caught between them, and, in his alarm and confusion, had his hand and arm caught between the buffers and drawheads.

2. That he was injured by reason of the projection of the lumber beyond the end of the Flint & Pere Marquette car, which, catching his body and forcing him against the end of the flat car, so hurt and frightened him that, in his struggles to escape, he unconsciously placed his hand and arm in position to be caught and crushed between the buffers and drawheads.

3. That by reason of the combined efforts of the projection of the lumber from the one car, and the improper construction of the other, he was caught and injured.

4. That he was injured by reason of the necessity of passing his hand and arm directly between the faces of

the opposing buffers, because of their being improperly placed in the same horizontal plane with the drawhead upon the flat car.

Upon the trial in the court below it was admitted that the car was received from the Flint & Pere Marquette Railroad Company, and that, at the time it was so received, defendant had in its employ a person known as "car inspector," whose duty it was to inspect all cars received by defendant at Holly, and to see that they were properly loaded and in good condition. After the arguments had been concluded, the court below remarked, substantially, that the claim that the flat car was defective in construction passed out of the case, for the reason that such defect, if it existed, was not the proximate cause of the injury. The court directed the verdict in favor of the defendant, on the ground that the car inspector was a fellow-servant with the brakeman, and, inasmuch as it did not appear that the company had not used due care in his selection, it could not be held liable for his negligent inspection, even if he were negligent. The case came to this Court on error, and was argued at the April term, 1892, and by a majority reversed, and remanded for a new trial. Subsequently a motion for rehearing was granted, and the case has now been fully argued and further considered by the Court. The writer of this opinion joined in the opinion for reversal, but since the reargument of the case, and a more full consideration of the principles involved, and the consequences attendant upon the rules then laid down, has concluded to revise that opinion, and write for affirmance.

The rule that the master must furnish the servant with a reasonably safe place in which to perform his work has been settled by repeated decisions of this Court, and in many late cases. *Van Dusen v. Letellier*, 78 Mich. 492; *Morton v. Railroad Co.*, 81 Id. 423; *Roux v. Lumber Co.*, 85 Id. 519. It is also well settled that this duty cannot

be delegated to another, so as to relieve the master from personal responsibility. *Van Dusen v. Letellier, supra, Morton v. Railroad Co., supra.* But the real point in controversy here is whether the duty of the master is to be extended so that he may be made liable for the neglect of a car inspector in not observing that a car is improperly loaded when it is to be put into the train for transportation. There is no complaint here about the car itself. It was proper in construction, and a safe car for use in that service. Upon the first argument of the case in this Court the real point in controversy was not so fully pointed out and considered as upon the reargument, and the case was regarded as very similar in principle to *Smith v. Potter,* 46 Mich. 258, which Mr. Justice McGRATH considered as virtually overruled by the later cases cited above. There is, however, a broad distinction between *Smith v. Potter* and the present case. In the former case, the injury complained of was received by reason of a defect in the framework of the car itself, while here the accident is attributable to improper loading. In the later decisions the doctrine of *Smith v. Potter* has been doubted, and the rule broadly stated that the master must furnish to the servant a safe place to work and safe appliances to work with. The learned counsel for the defendant does not contend here for the doctrine of *Smith v. Potter,* but does claim that the defendant discharged its full duty to the plaintiff when it furnished safe cars and a competent. inspector; that, having done this, it could not be held liable for the negligence of the inspector, as such inspector was a fellow-servant of the plaintiff.

The contention of defendant's counsel in this respect is correct. If a car is out of repair, so that it is in a dangerous condition for use, such fact might not be observed by the ordinary brakeman, but manifest only to a person of skill in that line. There is some reason, therefore, for

holding the company liable, where these circumstances are made to appear, though a competent inspector be furnished, for the master is bound to furnish safe tools and appliances as well as a safe place to work, and cannot delegate the duty of providing them, and thus escape liability. But, in regard to the proper loading of cars, quite a different rule must necessarily prevail. The master must undoubtedly exercise care in the selection of inspectors to see that cars are not improperly loaded or overburdened, so that they are dangerous to employés, but, after this has been done, it cannot be claimed that the master is to be held responsible for the faithful performance of the inspectors' duty. Any other rule than this would make railroad companies insurers of the lives and limbs of employés. In the present case, the projection of the lumber over the end of the car was as apparent to the brakeman, if he had taken the precaution to make observation, as to an inspector. It required no special skill or training to ascertain the fact. The duties of a brakeman are known to be dangerous, and when one enters such service he must be held to have assumed the risks of the employment. He must exercise care himself in going between moving cars to make couplings.

In an exhaustive opinion by Mr. Justice Brewer in *Railroad Co. v. Baugh*, 149 U. S. 368 (13 Sup. Court Rep. 914), the doctrine here enunciated is treated, and a like conclusion reached.

A case involving the same principle was before the court of appeals of New York, and decided in 1889. *Ford v. Railway Co.*, 117 N. Y. 638, reported in full in 41 Amer. & Eng. R. R. Cas. 369. It appeared that cars known as "gondola cars," generally used for carrying coal, and which had boxes from 18 to 24 inches high, were loaded with lumber. The company had furnished suitable stakes, which could have been properly fastened inside of the

boxes. Where the ends of the boxes were stationary, one end of the timber was laid down in the bottom of the car, and the other end projected over the end of the box in cases where the timber was longer than the box. The lumber was piled, after it reached the top of the box, so that one piece overlapped another, the pile thus constantly growing narrower across the top. The cars were loaded under the direction of a foreman of great experience, and, although they were not regular lumber cars, they were much used for carrying lumber for short distances. Plaintiff's intestate, a switchman, was injured by the lumber on one of the cars falling upon him. The cars had been properly inspected, before being sent out, by proper and competent inspectors. It was held that the sole cause of the injury was the improper loading of the car through the failure of the employès to use the stakes furnished by the company, and that those employés were the fellow-servants of the deceased, for whose carelessness the defendant was not responsible.

The same doctrine was also laid down in *Byrnes v. Railroad Co.*, 113 N. Y. 251. There the plaintiff's intestate was in defendant's employ as a brakeman. A car loaded with lumber at a way station was to be attached to the train. It was being moved by an engine from the switch to the main track. Plaintiff's intestate got upon it to stop it, but, in consequence of the improper manner in which the car was loaded, the brake was rendered useless, a collision occurred, and he was thrown from the car, and killed. In an action to recover damages, it appeared that the car and its appliances, before it was loaded, were in good condition. By the defendant's rules it was made the duty of the station-master either to inspect the car himself or have some one do so before it was taken out. Had this been done, the improper loading would have been discovered. It was held that, defendant having provided

a safe car, and a system and competent man for its inspection, it was not liable for injuries resulting to a co-employé from neglect of their duty. This rule was also laid down in the following cases: *Railway Co. v. Black,* 88 Ill. 112; *Railroad Co. v. Gower,* 85 Tenn. 465; *Railway Co. v. Husson,* 101 Penn. St. 1.

The court below was correct in ruling that the defective condition of the flat car, if it was defective, had no bearing in the case. The plaintiff's injury was produced by the defective loading, and not by any defect in the car.

The judgment must be affirmed.

HOOKER, C. J., and GRANT, J., concurred with LONG, J.

MONTGOMERY, J. I concur in the result reached by Mr. Justice LONG. My reasons are set forth in my opinion on the former hearing.

McGRATH, J. *(dissenting).* This case was originally heard at the April term, 1892, and is reported herewith. A rehearing was granted at the instance of defendant. The trial court, in directing a verdict, was governed by *Smith v. Potter,* 46 Mich. 258. That case is not only opposed to the clear weight of authority elsewhere, but this Court has refused to follow it in a number of cases since determined. *Van Dusen v. Letellier,* 78 Mich. 492, 502; *Adams v. Iron Cliffs Co.,* Id. 271, 288; *Brown v. Gilchrist,* 80 Id. 56, 63, 65; *Morton v. Railroad Co.,* 81 Id. 423; *Sadowski v. Car Co.,* 84 Id. 100, 105; *Tangney v. Wilson & Co.,* 87 Id. 453, 455; *Ashman v. Railroad Co.,* 90 Id. 567, 571. The principle underlying the doctrine of these later cases had been announced by Mr. Justice COOLEY in *Quincy Mining Co. v. Kitts,* 42 Mich. 34, 39.

In *Brown v. Gilchrist* the contention of the defendants was that they had provided plenty of suitable and good materials of which to construct the falling scaffold, and that they had placed the oversight and charge of building

it with a competent and fit servant. Mr. Justice LONG, speaking for the Court in that case, says:

"The contract of employment with the plaintiff was that he should have a safe place to work, and the law imposed upon the defendants the duty to furnish such a place. If the scaffold had been erected under the supervision and direction of one of the defendants themselves, and the casualty had occurred, * * * then the plaintiff would have had the right to recover for such injuries, unless himself negligent. I am not prepared to say that the master, under such circumstances, can shift his responsibility by the selection of a foreman; and I do not understand that this doctrine has ever been held by this Court."

The Court then proceeded to discuss the cases of *Quincy Mining Co. v. Kitts,* 42 Mich. 34, and *Hoar v. Merritt,* 62 Id. 386, and concluded as follows:

"That is, because the defendants had delegated the authority to Mr. Reed to select proper materials, and to direct, control, and superintend the erection, they should escape liability. If this were the rule, then the more they remained away from their business,—the greater power and authority they gave a foreman or manager to select material, employ men to build a safe and proper scaffold, upon which other servants, who had no knowledge of the manner of its construction, were to be invited to work,— the less the liability. It is the duty of the master to furnish the servant a safe place to work upon, and he cannot shift this responsibility by saying: 'The foreman whom I employed was selected with care, and for his fitness for the work entrusted to him. I pointed out to him all necessary and proper material; and, therefore, though he did not make a proper selection of material, and did not build a safe structure, my hands are clean, and no responsibility rests with me. I have discharged the full measure of my duty to the men whom he guides and controls.'

"Especially is this true if it appears, as in this case, that he has entrusted the entire management and control of that business in the hands of such foreman, with power to employ the men, and he himself retires from any direction and control over it. Mr. Reed apparently had this

authority; and, from the manner of the accident claimed by the plaintiff, it is evident that the men selected by Mr. Reed to find the timber to support these running boards were wholly unfit to build such a scaffold. It was Reed's duty to examine this scaffold, and see that it was properly built, before sending the plaintiff there to work; and, under the authority delegated to him by the defendants, and the control he assumed of affairs there, he stands in their place, and they must assume the risks of his negligence."

It cannot be said that if Reed had been selected by the defendants to put up the scaffold himself, and his duty had been confined to that particular act, defendants could have escaped liability. In other words, it matters not, so far as the discharge of defendants' duty as master to the employé is concerned, whether Reed's negligence consisted in want of care in supervising the work or in the performance of the manual labor connected therewith, and the defendants' liability cannot be said to rest solely upon the scope of the authority delegated to him, but rather upon the character of the act committed to his supervision.[1]

In the Sadowski case, Mr. Justice CAHILL says:

"The rule adopted by the federal courts and in most of the states, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools, for labor, are engaged in a different employment from those who are to use the place or appliances when provided, and they are not, therefore, as to each other, fellow-servants. In such case, the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his negligence."

The question is very fully discussed by Mr. Justice Harlan, in *Hough v. Railway Co.*, 100 U. S. 213; by Mr. Justice Field, in *Railroad Co. v. Herbert*, 116 Id. 642, 646; and by Gresham, J., in *King v. Railroad Co.*, 14

---

[1] See *Fox v. Iron Co.*, 89 Mich. 393.

Fed. Rep. 277, 280. See, also, *Flike v. Railroad Co.*, 53 N. Y. 549, 552; *Crispin v. Babbitt*, 81 Id. 516; *Pantzar v. Mining Co.*, 99 Id. 368; *Benzing v. Steinway*, 101 Id. 547; *Lewis v. Seifert*, 116 Penn. St. 628, 647; *Ford v. Railroad Co.*, 110 Mass. 240, 260; *Smith v. Iron Co.*, 42 N. J. Law, 467; *Fay v. Railway Co.*, 30 Minn. 231; *Railroad Co. v. Fox*, 31 Kan. 586; *Mulvey v. Locomotive Works*, 14 R. I. 204.

The statute makes it the duty of municipalities to keep streets and sidewalks in a condition reasonably fit and safe for travel. Municipalities delegate the care and supervision of their streets and sidewalks to boards, commissioners, and inspectors, who are presumed to be competent; yet a municipality cannot be heard to say that its duty ends with such delegation, or that the negligence of such boards, commissioners, or inspectors in respect to that duty is not its negligence.

The rule that it is the master's duty to provide the servant with a safe place to work, and, when the service required of an employé is of a peculiarly dangerous character, it is the duty of the master to make reasonable provision to protect him from the dangers to which he is exposed while engaged in the discharge of his duty, is not a new rule. It has been recognized by this Court in numerous decisions. *Swoboda v. Ward*, 40 Mich. 420; *Parkhurst v. Johnson*, 50 Id. 70; *Huizega v. Lumber Co.*, 51 Id. 272; *James v. Mining Co.*, 55 Id. 335; *Smith v. Car Works*, 60 Id. 501; *Adams v. Iron Cliffs Co.*, 78 Id. 271; *Brown v. Gilchrist*, 80 Id. 56; *Sadowski v. Car Co.*, 84 Id. 100; *Palmer v. Railroad Co.*, 87 Id. 281, 93 Id. 363; *Tangney v. Wilson & Co.*, 87 Id. 453; *Ragon v. Railway Co.*, 91 Id. 379; *Cregg v. Railway Co.*, Id. 624. The legal obligation of the master in respect of his servants, as settled by the adjudicated cases, is to exercise all the care which the exigencies of the occasion require:

1. To provide safe and suitable machinery, tools, and appliances, and to keep them in a suitable condition for use; and to provide a safe place for conducting the work.

2. To select competent servants, and in sufficient numbers, for the service, and to see that they continue competent and efficient.

3. To provide and publish proper rules for the guidance and protection of his servants in the discharge of their duties.

4. To properly instruct servants under age as to their duties and the hazards involved, etc., and not to subject them to the discharge of duties more hazardous than those for which they were engaged.

The language of the first paragraph has been held to include safe instrumentalities and facilities for doing the work assigned the servant. In the Ragon and Cregg cases, cited above, we held that reasonably safe side tracks, upon which brakemen were expected to go to couple cars, must be provided. *Plank v. Railroad Co.*, 60 N. Y. 607.

In *Flike v. Railroad Co.*, *supra*, two heavy freight trains were sent out within a few moments of each other. The first train broke in two, and the rear portion collided with the second train, injuring an employé thereupon. The first train had but two brakemen, whereas it should have had three, but the third brakeman was late, and the train was dispatched without him. The court held that it was the duty of the company to supply the train with the necessary brakemen. But, suppose that the train had been supplied with the necessary brakemen, but the cars had been so loaded as to prevent access to the brakes, could it be said that in that case the company would not be liable? The court in that case say:

. "It is claimed by the counsel for the appellant that the company are not liable, because the agent had, in fact, employed a third brakeman to go upon this train, who, by reason of oversleeping, failed to get aboard in time, and hence that the injury must be attributed to his negligence, or, if attributable to the negligence of the general agent

in not supplying his place with another man, such negligence must be regarded as committed while acting in the capacity of a mere co-servant, within the doctrine of irresponsibility. Neither of these positions is tenable. The hiring of a third brakeman was only one of the steps proper to be taken to discharge the principal's duty, which was to supply with sufficient help and machinery, and properly dispatch, the train in question; and this duty remained to be performed, although the hired brakeman failed to wake up in time, or was sick, or failed to appear for any other reason. It was negligent for the company to start the train without sufficient help. The acts of Rockefeller cannot be divided up, and a part of them regarded as those of the company, and the other part as those of a co-servant merely, for the obvious reason that all his acts constituted but a single duty. His acts are indivisible, and the attempt to create a distinction in their character would involve a refinement in favor of corporate immunity not warranted by reason or authority. As well might the company be relieved if the train was started without an engineer, or without brakes, or with a defective engine. The same duty rested upon the company, though every man employed had died or run away during the night; and if negligent in discharging it, either by acts of commission or omission, whether in employing improper help, or not enough of it, or in not requiring their presence upon the train, it is, upon every just principle, responsible for the consequences. Nor is the company relieved, although negligence may be imputed to the defaulting brakeman. The only effect of that circumstance would be to make the negligence contributory with the brakeman, but would not affect the liability of the company."

In *Dougherty v. Railroad Co.*, 18 N. Y. Supp. 841, strips had been nailed to the drop-stakes of a flat car, so as to reach to the top of a load of lumber, and it was held that such strips were a part of the equipment of the car. In *Bushby v. Railroad Co.*, 107 N. Y. 374, the drop-stakes furnished by the shipper were held to be appliances within the rule.

The simple question in this case, it seems to me, is whether the obligation of the master includes within its

scope the duty of providing cars so loaded that brakemen
may perform their duties in respect to them without greatly
increased hazard,—whether the plaintiff in this case can be
said to have been furnished with proper facilities for his
work.   The duty of inspecting the car itself, and that of
the inspection of its condition with its load upon it, have
a common origin.    Both spring from the duty of protec-
tion which the master owes to the servant.    There is no
ground for saying that one of these duties may be dele-
gated so as to relieve the master from all liability, and
that the other may not; nor is there reason in saying that
the person who inspects the car itself, its appliances, and
instrumentalities, with reference to the safety of those
engaged in its transportation, is not a fellow-servant, while
he who inspects the loaded car for a like purpose, and to
see whether it affords proper facilities for the performance
of the duties which must necessarily be performed in its
transportation, is a fellow-servant.   In the present case, both
duties were delegated to the same person, both are performed
with reference to the same end, and the person to whom
delegated must be held in the performance of each to occupy
the same relation to plaintiff and defendant.    It certainly
cannot be said that, with reference to stationed machinery,
belting, shafting, and gearing, the master must, at his
peril, provide the necessary guards and coverings, and
arrange the surroundings so as to render the place reason-
ably safe, yet, as to a train of cars, between which a brake-
man is required, in the ordinary discharge of his duties,
to go, while one section is being driven against a standing
section or car so loaded as to render the position of the
brakeman one of greatly increased hazard to life or limb,
the master may, in case of injury, escape liability.    The
employment is at best a dangerous one.    It is as essential
to the protection of the brakeman that these spaces be

kept clear as that the spaces be provided. ' This danger can be guarded against. · As is said by Mr. Justice LONG in *Palmer v. Railroad Co.*, 87 Mich. 290:

"In all cases where the danger can be readily guarded against, the employer is in duty bound to protect the employé at his peril."

The judgment should be reversed, and a new trial granted.

### OPINIONS FILED UPON FORMER HEARING.

MCGRATH, J. Plaintiff, a brakeman in defendant's employ, was injured while attempting to recouple after dropping two cars at the Lake Shore Junction, near Detroit, at 2 o'clock in the morning of October 21, 1890. The last car on the moving section of the train was what is known as a "sand flat car," upon which the bumpers are much shorter than in the ordinary car. The car to be attached was one laden with lumber. The lumber projected several inches beyond the end of the floor of the car, leaving a space of but seven inches, when the cars were coupled, between the ends of the lumber and the end of the sand flat car. When plaintiff went between the cars they were two rods apart. , With the aid of his lantern he noticed the character of the drawbar and bumpers upon the sand flat car, and held up his light, and saw that the other car was an ordinary flat, but did not notice that the lumber projected beyond the end of the car. When the cars came together, plaintiff's body was caught between the lumber and the end of the sand flat car, and his arm was thrown between the bumpers and crushed. At the conclusion of plaintiff's case the court directed a verdict for defendant, upon the ground that the proximate cause of the injury was the improper loading of the lumber car, and that, as defendant had made provision for the inspection of cars, the negligence was that of the inspector, who was a fellow-servant of the plaintiff.

The rule that the master must furnish the servant with a reasonably safe place in which to perform his work has been settled by repeated decisions of this Court. *Van Dusen v. Letellier*, 78 Mich. 492; *Morton v. Railroad Co.*, 81 Id. 423; *Roux v. Lumber Co.*, 85 Id. 519; *Irvine v. Railroad Co.*, 89 Id. 416. It is also well settled that this duty cannot be delegated to another, so as to relieve the master from personal responsibility. *Van Dusen v. Letellier, supra; Morton v. Railroad Co., supra.* These cases clearly overrule the doctrine of *Smith v. Potter*, 46 Mich. 258. It was there held that the duty of inspection was not one of management or supervision, and that inspectors and brakemen were in the strictest sense fellow-servants. In the Van Dusen and Morton

cases, it was held that the duty of inspection was one that could not be delegated so as to relieve the master of liability. Mr. Justice MORSE, in the Van Dusen case, says:

"If the master can delegate this duty to an employé, and apply the doctrine of fellow-servant to such employé, because he is working in and about the same business, and in the same general line of such business,—as, in this case, the manufacture and piling of lumber,—then the employer is permitted to shirk his duty upon another, and then allowed to escape all responsibility and liability upon the plea that the person injured is the fellow-servant of his delegate or agent. The law, as I understand it, will not permit this. It is a duty the master owes, which he cannot delegate to a fellow-servant of his employés. If he picks out one of the men working about this mill, and imposes upon him the duty of seeing that the machinery is kept in safe repair, or delegates to one of the men working in the mill yard the duty of seeing that these docks are kept safe and sound, these men, as far as these duties are concerned, stand in the place of their employer, and their negligence is his negligence."

CHAMPLIN, J., concurring, says:

"I do not think the duty of inspection, when such inspection is required by the circumstances of the case, can be delegated by the master in such manner as to avoid responsibility, and I concur in reversing the judgment."

CAMPBELL, J., who wrote in the Smith case, says:

"I agree in reversing the judgment, but I do not think it proper to throw doubt on our previous decisions which have dealt with the questions in this cause."

The Morton case, by a very full and able opinion by CAHILL, J., reaffirms the doctrine of *Van Dusen v. Letellier.*

In *Irvine v. Railroad Co.* we held that it is as much the duty of the company to see that cars are so loaded that brakemen will have reasonably safe access to the brakes, and an opportunity for the discharge of their duties, as it is to see that proper appliances are provided. In the discussion of that question, however, I am satisfied that the statement made in that opinion, that if the cars were inspected, or if the company provided the means for their inspection, by a fellow-servant, and the inspector neglected his duty, then there could be no recovery, is not supported by the later decisions of our own Court, nor by the weight of authority elsewhere. Shear. & R. Neg. §§ 194, 204; *Railroad Co. v. Fox*, 31 Kan. 586; *Ford v. Railroad Co.*, 110 Mass. 240; *Hough v. Railway Co.*, 100 U. S. 213; *Railroad Co. v. Herbert*, 116 Id. 642; *King v. Railroad Co.*, 14 Fed. Rep. 277; *Lewis v. Seifert*, 116 Penn. St. 648; *Railroad Co. v. De Armond*, 86 Tenn. 73; *Fay v. Railway Co.*, 30 Minn. 231; *Gutridge v. Railway Co.*, 94 Mo. 468; *Fuller v. Jewett*, 80 N. Y. 46; *Gottlieb v. Railroad Co.*, 100 Id. 466; *Railway Co. v. Kernan*, 78 Tex. 294; *Hulehan v. Railroad Co.*, 68 Wis. 520; 7 Amer. & Eng. Enc. Law, 825, and note. The doctrine

of these cases is that when it is the duty of the master to furnish sound apparatus, machinery, etc., and defective machinery causes an injury to the servant, the rule which exempts the master from liability for injury to servants through the negligence of a fellow-servant does not apply.

In *Hulehan v. Railroad Co.*, *supra*, it was held that, where a railroad company permitted its tracks to be incumbered with sticks and blocks of wood at places where plaintiff was called upon to perform his duties in coupling cars, by reason of which he was injured. the negligence of permitting the roadway to be obstructed was that of the company.

At best, the duties of brakemen are dangerous, and it is the plain duty of their employers to provide against increased peril. There is no reason why one rule should apply to the case of a defective brake-chain, and that another should govern a case where a car has been so improperly loaded as to prevent the use of the brake without great hazard. In the recent case of *Railway Co. v. Shean* (Tex. Sup.), 18 S. W. Rep. 151, the cars were improperly loaded, but the decision was put upon the ground that the plaintiff knew that the car was loaded in such a manner as to render the attempt to couple it extremely hazardous. In the present case plaintiff had no such knowledge.

It is insisted, however, that this lumber car was one received from another company; but the obligation to receive cars from other roads does not require the reception of defective cars, or cars so loaded as to render their transportation hazardous to employés. The duty is not one to be discharged without reward. The service rendered is not gratuitous. As was said by CAMPBELL, J., in *Smith v. Potter*:

"This [duty imposed by statute] does not require the transfer of cars unfit for passage. * * * There is no difference in the nature of the danger, or in the quality of the inspector's employment, between the case of shifting cars belonging to other roads and cars belonging to the same road. Defects in both lead to the same results, and the methods of examining both are identical."

In *Fay v. Railway Co.*, *Gutridge v. Railway Co.*, *Gottlieb v. Railroad Co.*, and *Railway Co. v. Kernan*, *supra*, the cars were freight cars, but the cases hold, and I think correctly, that that fact was immaterial.

It follows that the judgment must be reversed, and a new trial had, with costs of this Court to plaintiff.

MORSE, C. J., and LONG, J., concurred with McGRATH, J.

MONTGOMERY, J. *(dissenting)*. I cannot yield my assent to the views expressed by Mr. Justice McGRATH in this case. The evidence showed that whatever of fault there was in permitting the car to be loaded in the manner in which it was was the fault of

an, inspector provided by the company, and no fault was attributed to the company in employing him. This Court has held, not once, but repeatedly, that an inspector of cars, under such circumstances, is a fellow-servant of the train-men, and that no recovery can be had on account of his negligence. *Smith v. Potter*, 46 Mich. 258; *Irvine v. Railroad Co.*, 89 Id. 416. And the doctrine of non-liability for the fault of a co-employé has been also applied in other cases where the relations were analogous, and where the authority of the offending servant was quite as broad as is that of one whose duty it is to see that cars are properly loaded. *Hoar v. Merritt*, 62 Mich. 386; *Gardner v. Railroad Co.*, 58 Id. 584; *Greenwald v. Railway Co.*, 49 Id. 197; *Quincy Mining Co. v. Kitts*, 42 Id. 34; *Michigan Central R. R. Co. v. Dolan*, 32 Id. 510. The case of *Smith v. Potter* was cited and its doctrine approved in *Peterson v. Railway Co.*, 67 Mich. 102, and was also cited with approval in *Randall v. Railroad Co.*, 109 U. S. 484.

But it is suggested that the case of *Smith v. Potter* has been overruled by *Van Dusen v. Letellier*, 78 Mich. 492; *Morton v. Railroad Co.*, 81 Id. 423; *Roux v. Lumber Co.*, 85 Id. 519. It is clear, as I think, that it was not the purpose of Justice MORSE, who wrote the opinion in *Van Dusen v. Letellier*, to overrule the case of *Smith v. Potter*. In *Peterson v. Railway Co*, Justice MORSE recognizes the binding authority of *Smith v. Potter* and other kindred cases in the following language:

"If the question were an open one in this State, I should not be inclined to hold that either of these persons was a fellow-employé of the plaintiff; but the law in this respect is well-settled in this State, and the circuit judge followed the decisions of this Court, citing them in his charge to the jury."

In *Van Dusen v. Letellier* the case of *Smith v. Potter* is distinguished, as is also the case of *Hoar v. Merritt*. All that is held by *Van Dusen v. Letellier* is that the employer owes a duty of providing a safe place for his employés to work, and that this duty cannot be delegated to a fellow-servant. The case fully recognizes the distinction between the duty of furnishing a safe place and safe machinery to the employé and the duty of seeing that the machinery, place, or appliances are properly used or employed.[1] The same may be said of *Morton v. Railroad Co.*, 81 Mich. 423. This distinction is again recognized in *Rawley v. Colliau*, 90 Mich. 31, and *Kehoe v. Allen*, 92 Id. 464. In *Morton v. Railroad Co.*, as the case was put to the jury, the sole question was whether the appliance in question was reasonably safe when originally provided by the defendant, and the circuit judge instructed the jury that the defendant's liability ceased when it provided a chain that was in the first instance reasonably safe.

---

[1] See *Piette v. Brewing Co.*, 91 Mich. 605.

In *Irvine v. Railroad Co.*, in an opinion by Mr. Justice McGRATH, the Court held distinctly that, if the company provided means for the inspection of the cars by a fellow-servant, and the inspector neglected his duty, there could be no recovery.

In the present case the injury resulted, not from any fault in the appliances used, but because, in making use of cars and machinery suitable to the purpose, a fellow-servant of the plaintiff, engaged in the same general employment, within the rule in *Smith v. Potter*, neglected his duty. The case of *Smith v. Potter* has not, as I view it, been overruled by the cases referred to, and certainly the Court has not taken the pains to point out to the profession the fact that it has been overruled; on the contrary, its doctrine has been frequently recognized, and has become the settled law of the State. The circuit judge applied the doctrine to the case at bar, and the judgment should be affirmed.

GRANT, J., concurred with MONTGOMERY, J.