HENRY v. ANN ARBOR RAILROAD CO.

MASTER AND SERVANT—RAILROADS—FELLOW-SERVANTS—STATION AGENT—FREIGHT CONDUCTOR.

A freight conductor riding on the ladder of a freight car was hurt by contact with a movable platform immediately after being placed in position by the station agent to facilitate the loading of milk onto an expected passenger train. There was no defect in the construction or repair of the platform. *Held*, that the company was not liable, the agent, while performing that duty, being a fellow-servant of the conductor.

Error to Shiawassee; Smith, J. Submitted April 25, 1905. (Docket No. 83.) Decided June 8, 1905.

Case by T. Henry against the Ann Arbor Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*T. W. Whitney* (*Alexander L. Smith*, of counsel), for appellant.

*Watson & Chapman*, for appellee.

BLAIR, J.   This cause comes into this court on a writ of error to the circuit court of Shiawassee county, by which it is sought to reverse a judgment rendered in favor of the plaintiff.   The plaintiff was a freight conductor in the employ of defendant company.   On the 21st of July, 1903, he was injured—losing his right arm—by being run over by the train of which he was in charge at the station at Whitmore Lake, on the line of defendant's railroad.   At the time of the accident he was employed as a conductor of a freight train running between Durand and Toledo, and had been so employed for about nine or ten months.   The declaration contains three counts.   The first contains the following language:

"Said defendant carelessly and negligently built and constructed a milkhouse with a platform thereon dangerously near the main line of said defendant, and it carelessly let down and left its platform in such a condition that it was so near the main line of said defendant's railroad at Whitmore Lake, a station on defendant's line of road, that while this plaintiff was climbing up the side of the car in the performance of his ordinary work as a conductor of said freight train, and to which said car was attached, said platform came in collision with this plaintiff while he was in the exercise of due and ordinary care, and in no way guilty of any negligence that contributed thereto; and by reason thereof he was knocked from the side of the car onto the track, and run over by said train, cutting off his right arm."

The second count, after setting forth the duty of providing a safe place, etc., is as follows, to wit:

"But, notwithstanding the duty aforesaid, it carelessly and negligently constructed a milkhouse near to its main line of track, and within six feet thereof, and constructed a movable platform on this milkhouse, which worked up and down by the use of pulleys, so that when said plat-

form was dropped down it came up to the cars on the main line of said defendant's railway.

"And on, to wit, the 21st day of July, 1903, while plaintiff was engaged in his regular employment as conductor, and was going up the side of the car, which was attached to a freight train, which was in motion, he came in collision with said platform, which then and there fell down and struck this plaintiff, and caused him to collide therewith, and knocked him with great force and violence from the side of said car to the ground, causing him to be run over by said train, cutting off his right arm."

The third count is as follows, to wit:

"And for that whereas, said defendant being a railway corporation as aforesaid, and said plaintiff being an employé of said defendant as above described, said defendant owing him the duty, as above set forth, said defendant carelessly, negligently, wantonly, and with gross negligence constructed near its line a milkhouse at Whitmore Lake, a station on its road, and constructed the same within six feet of the main line, and carelessly and negligently, willfully, wantonly, and with gross negligence constructed a movable platform on said milkhouse, which would drop down against the cars on said defendant's main line. And while this plaintiff was in the exercise of due and ordinary care, and not being guilty of any negligence that caused or contributed to said injury, he came in collision with said platform, which was at the time of said collision within four inches of the side of the car upon which this plaintiff was climbing in the ordinary pursuit of his employment, which collision was so violent that it knocked this plaintiff from the side of the car to the ground, causing him to be run over by said train, and cutting off his right arm."

The train of which plaintiff was in charge was a northbound train known as the "switch local." It had stopped on a side track south of the station at Whitmore Lake. The station is on the east side of the track. There is a cement platform in front of the station extending 60 or 70 feet north of the station building. At the north end of this platform is a small frame structure called a "milkhouse," the western face of which is about 5½ feet from the edge of the cement platform. This house is used for

loading and unloading cans of milk on and off from express cars on passenger trains, this business being necessarily (from the perishable character of the commodity) handled by express. For facilitating the handling of the business there is a movable platform, swung on hinges at the bottom. When down, the outer edge comes about to the edge of the cement walk. When up, it is hooked up against the building itself. It is raised by means of ropes, which run on pulleys. When necessary to lower it, it is unhooked, and drops over the cement walk, the legs swinging into proper position to support it. On the occasion in question, it being about 9 o'clock a. m., July 21, 1903, plaintiff left his train on the siding south of the station, and went north past the station on the cement platform to the milkhouse to get a drink of milk out of some of the milk cans which had been placed there by the patrons of the railroad for shipment on a north-bound passenger train, which was due in a short time. Plaintiff jumped into the milkhouse from the south side through a door or opening, got a drink of milk from one of the cans, then jumped out the same door, and went south towards his train, which was doing some switching south of the station. He gave the engineer the signal to go ahead, and as the train passed he climbed on the side of a car, intending to swing around to and climb up the ladder on the end of the car, and was struck by the platform of the milkhouse. The station agent testified that he had lowered the platform about 10 minutes before the accident, in order to be prepared to roll out the milk and have it ready for the morning passenger train. The plaintiff speaks several times of the platform falling and striking him, but when asked directly by his counsel how he knew it fell he testified as follows:

"*Q.* Did you see it coming just before it struck you?
"*A.* No, sir; I didn't.
"*Q.* What I want to get at is how you knew it fell. How do you know the platform fell down?

"*A*. Just as I got there by the side of it, I just happened to glimpse around like that, and that is all I remember.

" *Q*. Was it coming at that time ?

" *A*. I could not say whether it was coming, or whether it had got down then, or how it was."

Plaintiff contends that defendant—*First*, violated its duty to furnish him with a safe place in which to perform his services by the construction of this milkhouse with a platform permanently attached at one end, which, when down, would strike one properly on the side of a car; *second*, that the platform fell upon him while passing, and this of itself was prima facie evidence of negligence on the part of defendant; *third*, the defendant was negligent in not providing by rule when the platform should be lowered. Defendant requested the court to direct a verdict for defendant, for the reason, among others, that, if there was any negligence shown, it was the negligence of the station agent, Perry, who, in the discharge of the duty of operating the platform, was a fellow-servant of plaintiff. This request was refused, and error is assigned upon such refusal.

We think this request should have been given. The well-settled doctrine that it is the duty of the master to furnish a reasonably safe place for the servant's work, and that this is a positive duty, which cannot be delegated to others so as to escape liability for its breach, has no application to the facts of this case. The evidence conclusively shows that the milkhouse and platform were properly constructed, and safe, except when improperly or negligently used in the operation of the same in the transaction of the legitimate business of the road. The essence of the negligence charged in the declaration is that the milkhouse was constructed so near to the track that, when the platform was lowered or fell, it would strike a trainman on the side of a car. There is no allegation that the platform was otherwise improperly constructed, or that its fastenings were insecure, or insufficient for the purpose of re-

taining the platform in position when raised.   The defendant's station agent testified:

"There wasn't anything out of repair in regard to this table, the device was placed there by the company.   It was my duty to load these milk cans on, and put that table there to facilitate the loading of the cans.   It was properly constructed with pulleys and a hook, and when it was raised it was securely fastened, and when I wanted to load some cans, we lowered the platform to roll the cans onto for loading into the car—roll the cans onto it before they were loaded into the car.   When the passenger train would come along, they were rolled right into the baggage car.   I generally rolled them in to the trainmen.   Now, the raising and lowering of the platform was incident to the use that it was calculated to serve, and I was the party that was there for the purpose of raising and lowering it and loading the cans on the platform and from the platform rolling them onto the cars; and when I got through it was my duty to raise the platform."

It is perfectly clear, we think, that the duty of raising and lowering this platform and of securely hooking it when raised was not a primary duty of the master, but was such an one as it might, and necessarily would, be compelled to commit to subordinates, along with the multitude of other details pertaining to the operation of its business.   In the discharge of this duty the station agent was not the representative of the defendant, but the fellow-servant of the plaintiff.   *Dewey* v. *Railway Co.*, 97 Mich. 329, 343 (16 L. R. A. 342, 22 L. R. A. 292); *Loranger* v. *Railway Co.*, 104 Mich. 80; *Byrnes* v. *Railroad Co.*, 113 N. Y. 251 (4 L. R. A. 151); 4 Thompson on Negligence, § 3876.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.