## WILLIAM H. FOX v. THE SPRING LAKE IRON COMPANY,

*Master and servant—Negligence—Fellow-servants—Directing verdict—Pleading.*

1. A failure to aver in a declaration in a negligence case that it was the duty of the defendant to have exercised due care in those respects wherein his acts are charged to have been negligent may be taken advantage of by special demurrer, but not after verdict.

2. The Court adopt the New York rule governing the liability of the master for the negligent act of his servant, whereby another servant is injured, namely, to hold the master liable for negligence in respect to such acts and duties as he is required to perform as master, without regard to the rank or title of the agent intrusted with their performance, as to which acts he occupies the place of the master, who is liable for the manner in which they are performed.

3. There was ample evidence in this case (see opinion) to go to the jury upon the question of the defendant's negligence.

4. Where the question of the contributory negligence of the plaintiff in a negligence case depends upon the finding of a certain fact for or against his contention, as to which the testimony is conflicting, it should be submitted to the jury.

5. Corporations must act through agents, and it is immaterial whether the agent, if duly authorized to act as such, is or is not a stockholder.

6. In the absence of the officers and corporators of a corporation, it may be inferred that a servant who assumes to and does discharge the duty of keeping the machinery and appliances necessary to the prosecution of the corporate business in repair is the representative of the corporation in so doing.

7. A motion that the court direct a verdict in favor of the defendant at the close of the plaintiff's testimony should not be granted where there are any inferences of fact to be drawn by a jury from the testimony.

Error to Muskegon. (Dickerman, J.) Argued October 28 and 29, 1891. Decided December 22, 1891.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Myron H. Walker* and *John M. Mathewson (De Long & O'Hara,* of counsel), for plaintiff.

CHAMPLIN, C. J. The defendant was operating a blast-furnace at Bangor, Mich., in March, 1888, and employed plaintiff as top filler, whose duty it was to put coal and ore into the top of the furnace, and keep it full. There was a platform at the top of the furnace, to which the coal and ore were brought by means of a car running up an inclined plane from the stock-house, and operated by an engine in the engine-house connected with the car by a wire rope which wound around an iron drum. There was a brake attached to the drum for the purpose of stopping and holding the car at any point on the track. The whole machinery was called an "automatic hoist," and its operation was under the control of the top filler. When the car was drawn to the platform at the top of the inclined plane it was level with the platform, and the coal with which it was laden, being in hand carts, and the ore, in wheelbarrows, were removed to the platform and dumped. When this was being done the retention of the car in place was not secured alone by the brake, but there was a hook and staple attached to the platform and car which was used to hold and secure the car in place safely. It was a fact well known to the plaintiff and to the other employés that the brake could not be trusted at all times to hold the car in place. In the operation of the hoisting engine it had sometimes happened that, by reason of the wire rope stretching, or some other cause, the car would not be brought quite up

to the platform, and then the level of the car would be below that of the platform, making it difficult to unload. Whenever this happened, the engineer, with such help as he required, would readjust the automatic part of the machine by setting it ahead to let the car run up higher. To do this it was necessary to draw the key which held the automatic gear wheel to the shaft.

The plaintiff's shift was from 12 o'clock at night to 12 o'clock noon. On the night of the 14th of March, 1888, when he went to his place at the top of the furnace, he found that the car did not quite come to the platform. He had observed this fact before he ascended the ladder or steps leading to the platform, and had notified one Winch, then in charge of the engine, of that fact, and he said it would be repaired as soon as Mr. Marshall, the head engineer, came. George Marshall was the head engineer, and it was his duty to remedy the difficulty. Hiram Barnes was night furnaceman. He had charge of the furnace, and charge of the men, from 12 at night until noon. The plaintiff was subject to his orders. One Gibson was the "boss foundry-man," who had general oversight and supervision of the men and work, and who hired and discharged employés. It was testified to that Barnes had in one instance discharged a man employed as top filler, and employed another in his place.

After unloading the car, plaintiff let the car down to the stock-room, and went to putting in and leveling off the coal and ore, when Barnes called to him to come down, and then Marshall called to him to come down and help fix the engine. He came down, and went to the hoisting-engine room, and found them engaged in trying to remove the key to the wheel of the automatic appliance. Marshall was holding an iron bar with the end turned up to hook onto the end of the key, and Barnes was

striking the other end of the bar with a sledge hammer. Barnes told plaintiff to hold .the light. The light was a torch with a handle six or eight inches long. It was lighted and upon the floor. Plaintiff took up the light, and held it. The bar broke without loosening the key, and then Marshall took a cold-chisel and hammer, and went to the other side of the drum, and tried to get the key out. The drum is of iron; about 20 inches or 2 feet wide, having flanges at the rim to hold the coil, and about 4 feet in diameter. It has iron spokes an inch thick and 4 inches wide. Barnes told plaintiff to hold the light so Marshall could see. Plaintiff stepped to the end of the drum, and held the light partially into it,. and Marshall said he could not see where plaintiff was. holding the light. Then plaintiff said: "You wait till I see where I can see, and then you can see." He then turned himself around a little, and stuck his arm into the drum between the spokes and standard of the drum, leaned over so he could see where Marshall was working, and held the light that way. Plaintiff testifies, and so does Johnson, that Barnes told him to hold the light into the drum. Plaintiff also testifies that Marshall was working with the cold-chisel and hammer inside the drum on the opposite side from him, a distance from where he stood holding the torch of 20 inches or 2 feet; that he held the light below the shaft where Marshall was at work so he could see. The iron cable was wound around the drum, and attached to the car. Marshall had finished his work, and was straightening up, and before plaintiff removed the torch the drum revolved, and caught his. arm between the spoke of the drum and standard, and crushed and broke his arm. The plaintiff brought this action to recover damages for the injury thus received.

The declaration contains four counts. The first, second, and fourth counts do not set forth or allege any duty of

defendant towards plaintiff, but aver certain acts which they charge were negligent, viz,, in the first count plaintiff avers—

"That while so holding said light in such manner said engine was started carelessly and negligently by said Barnes and Marshall, or one of them, and, without any warning to or knowledge of the plaintiff, the said wheel began to revolve, whereupon the plaintiff's right arm was caught," etc.

In the second count it is averred—

"That said Marshall and Barnes did attempt and undertake * * * to repair and fix said hoist, and did for that purpose direct said plaintiff, who was under the orders and authority and whose duty it was to obey said Barnes and Marshall aforesaid, to assist them in repairing the same; and in so assisting them said plaintiff was directed and ordered by said Barnes to hold said torch or light inside of the drum of said automatic safety hoist; * * * that while so holding the same, through the careless, negligent, and unskillful acts of said Barnes and Marshall in repairing said engine, the automatic brake attached to said engine, and with which the same was started and stopped, was released or set off in such manner as to cause said drum to revolve rapidly, and without any notice or warning to said plaintiff, and his right hand and arm were thereby caught," etc.

The fourth count avers—

"That said plaintiff was under the direction and orders of said Barnes and Marshall in his work for said defendant, and it was a part of his duty to obey their orders and directions; and that the said Barnes and Marshall, in repairing said hoist, did carelessly and negligently pry up the drum or wheel of said hoist, around which was wound the wire rope or cord which was fastened to and raised said car of ore to the top of said furnace, and in prying up said drum or wheel they, the said Barnes and Marshall, did carelessly and negligently wind up around said wheel or drum a part of said cord or rope, thereby lifting and hoisting from the pit the car so attached to the end of said rope, and thereby hoisting the same some distance up said inclined plane or runway towards the

top of said furnace, and did then negligently neglect and fail to fasten said wheel or drum except as said automatic brake held it in position, or to block or in anywise support said car, but left the weight of said car attached to said rope or cord, pulling at said wheel or drum, and did then proceed with the repairing of said hoist; * * * that thereupon, while so holding the light, and having his arm part way inside of said drum or wheel, the automatic brake holding said wheel in position was in some manner negligently released or set off by the said Marshall in making said repairs, and was at the same time, and would not at all times hold said wheel, of which defect defendant then and there had notice, and by reason of said defect and said negligence of said Marshall became released and was set off, and thereupon the weight of said car attached to said rope or wire wound around said wheel, as it descends said inclined road to the bottom of the pit from whence it has been hoisted, caused said wheel or drum to revolve rapidly and with great force, and before said plaintiff had any warning," etc.

The third count alleges that—

"It became and was the duty of said defendant to keep said machinery and said automatic engine or hoist in proper repair and in good condition, so that it should not be in any wise dangerous or injurious to defendant's employés and to this plaintiff. And, such being their duty as aforesaid, the defendant did on, to wit, the 14th day of March, A. D. 1888, neglect to keep or put the same in repair, and had for a considerable time prior thereto permitted and allowed the same to become and remain in poor and dangerous condition and out of repair, whereby the said hoist would not lift or carry the car of ore up said inclined track to the top of said furnace in proper manner, and whereby the safety or automatic brake, so called, by which said hoist was stopped and started, would not work, and would not safely and securely stop said hoist, and stop the lifting and hoisting of said cars of ore, and hold said car in position, as it was intended to do, but would and did allow the said hoisting wheel or drum of said hoist, around which the wire or rope hoisting said car was wound, to revolve and be unwound by the weight of said car in descending said inclined plane or track, and would not safely and

promptly start or stop the revolving of said wheel, and securely hold the same stationary, of all of which said defendant then and there had notice; and thereby, while said plaintiff was so holding said torch, under the direction and orders of said Barnes and Marshall, inside the drum or wheel of said hoist, which necessitated the putting his arm inside thereof, and to assist them in repairing said hoist, said brake did give away because of the defectiveness of said hoist, and cause or allow said hoisting wheel or drum to revolve rapidly, and thereby said plaintiff's arm was caught between the spokes of said drum and the standard upon which said drum rested, and his said hand and arm were thereby crushed," etc.

The first, second, and fourth counts would not have been good upon special demurrer, but after verdict they will be considered as having averred it to have been the duty of defendant to observe due care in those respects wherein the acts of defendant are charged as negligent.

In this State the rule governing the liability of the master for the negligent act of his servant, whereby another servant is injured, is that which is clearly stated by Chief Justice Church in *Flike v. Railroad Co.*, 53 N. Y. 549, in these words:

"The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care, in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter * * * is liable for the manner in which they are performed."

And hence a true test is—

"Whether the person whose *status* is in question is charged with the performance of a duty which properly belongs to the master." McKin. Fel. Serv. p. 54.

Applying this test to the facts of this case, there can be no doubt that Marshall was charged with the duty of keeping the hoisting apparatus in repair, and that such

duty properly belonged to the corporation to perform. He was not, therefore, merely a fellow-servant with plaintiff, and the case may be considered in the same light as if Marshall were the owner and proprietor of the plant at Bangor, and was engaged in repairing the hoisting apparatus, and had called upon his servant Fox to assist him.    Whatever duty Marshall owed to Fox, under the circumstances, the company is chargeable with. There was no testimony in the case that either Marshall or Barnes negligently released the brake holding the automatic wheel, and, if recovery can be had at all, it must be upon the ground that the brake was defective, and liable to slip, and let the car down the inclined plane by its gravity; and that Marshall had knowledge of the defect, and, having such knowledge, failed to take the precaution to block or fasten the car so that it could not fall back into the car-pit, and thus revolve the drum around which the cable was coiled.    And, if it be determined that Marshall was negligent in that respect, the further question arises, was the plaintiff free from contributory negligence?    The testimony is undisputed that Marshall knew that the brake did not always safely and securely hold the car from going down the track; that it had slipped a number of times, and was liable to slip at any time.    He testified on his direct examination, on behalf of defendant, as follows:

"*Q.* What have you to say as to ever instructing any person to put their hand into that drum?

"*A.* I have told anybody that was helping me never to put their hand in there."

And upon cross-examination the witness testified as follows:

"*Q.* Did you say anything to Fox?
"*A.* I don't know as I did.
"*Q.* Nor Fox didn't say anything to you?
"*A.* No, sir.

"*Q.* From the time that you first came in there, about 12 o'clock, until after his arm was injured. You say he had never assisted you in fixing the hoisting works there before?

"*A.* I don't think he had.

"*Q.* Before that time. Why didn't you tell Fox then and there, if it was the first time he had ever helped you fix that hoisting work, the same as you had those other times, not to put his hand inside of that drum?

"*A.* I knowed he was an old top-hoist man, and had worked there off and on for four or five years. He stood there and see me hoist it up, and I presumed he knew the result as well as I did.

"*Q.* You presumed he did?

"*A.* Yes, sir; he stood right there.

"*Q.* But you don't think he was ever present when it was fixed before?

"*A.* I couldn't say as to that.

"*Q.* And that he never assisted you in fixing it?

"*A.* Never assisted me.

"*Q.* What was the result that you presumed Fox knew as well as you did?

"*A.* He knew that the car was standing on the track and it was liable to slip.

"*Q.* You said that the brake slipped was the cause of the drum revolving?

"*A.* Yes, sir.

"*Q.* Was it in the habit of slipping?

"*A.* Why, not very often.

"*Q.* Was it in the habit of slipping when it was in good repair?

"*A.* All that it ever would slip as a general thing when it would not quite come to the top, when the rope was getting a little long may be it would come up, and then it would slip back a little; and when it would get so bad that it would not stay up it had to be fixed.

"*Q.* At the time that did slip, you had just fixed it and got done?

"*A.* Yes, sir; I had got done.    *    *    *

"*Q.* If it was not in the habit of slipping very often, why was it you warned these other men not to put their arm in there?

"*A.* Because there was not any use in putting their arm in there, and it might slip.

"*Q.* When you was fixing that you knew that Fox had his arm in there, didn't you?

"*A.* No, sir; I did not."

And again, on further cross-examination, he testified as follows:

"*Q.* Whose duty was it to fix this machinery or engine where the injury occurred?

"*A.* I supposed it was mine.

"*Q.* You had a work bench and tools?

"*A.* Yes, sir.

"*Q.* And vise?

"*A.* Yes, sir.

"*Q.* Furnished you by the company to do that kind of business?

"*A.* Yes, sir.

"*Q.* Whenever it was needed. Now, when did you first see Johnson there?

"*A.* I didn't see him until after the accident happened. I see him in the stock-house was the first I seen him.

"*Q.* This was part and parcel of your business, this fixing of this machine, this hoisting machine?

"*A.* Yes, sir.

"*Q.* Now who brought that car up onto the track?

"*A.* I did.

"*Q.* How far did you hoist it?

"*A.* I presume,—I didn't go out to see; but from the way the engine revolved it would take the car about two or three feet from the floor.

"*Q.* Now, if this brake was in the habit of slipping, why didn't you block the car?

"*A.* Well, sir, I could draw the key and do all my work while I was going down to block the car. I didn't have to work in connection with the drum was the reason I didn't block the car.

"*Q.* Isn't it a fact that the leaving of that car on the track rendered it still more unsafe than as though it had been down in the pit?

"*A.* Yes, sir; it would not have slipped if it had been down in the pit.

"*Q.* And that was what caused the brake to slip?

"*A.* Yes, sir.

"*Q.* Then, if you had blocked the car when you

brought it up, this accident would not have occurred, would it?

"*A.* It might not.

"*Q.* Would it? Would it have slipped? Would there have been anything to cause it to slip?

"*A.* I don't think it would."

And further:

"*Q.* Now, witness, this brake was constructed and operated for the purpose of holding a loaded car, was it not, as well as an empty one?

"*A.* Yes, sir.

"*Q.* When it was in proper order it would hold a loaded car, would it not?

"*A.* Yes; it has held it.

"*Q.* On this occasion it would not hold an empty car, or did not?

"*A.* No, sir; it slipped."

And these further questions were asked and answered:

"*Q.* Well, the reason you give for not going out to block that car was because you was in a hurry?

"*A.* I was in a hurry, and I didn't think it was necessary, because I didn't have any work to do in connection with the drum.

"*Q.* You thought you could fix it in a short time, and so you neglected it?

"*A.* I wasn't working in the drum, where I thought it would be connected with the drum."

It was testified to by witnesses on the part of the plaintiff that the drum was revolved about a quarter around, so that the car was drawn up the track three feet, and that it was not blocked, and suddenly went back. There was ample evidence to go to the jury upon the question of the defendant's negligence.

Was there testimony to be submitted to the jury upon the question of plaintiff's contributory negligence? The plaintiff had worked at that place for defendant and its predecessors for upwards of 12 years. He knew all about the liability of the brake to slip, and let the car down the track, and had observed that fact himself. He was

called to assist in making the repairs, and told where to hold the light. He put his arm in between the spokes of the drum, in order to do so satisfactorily to Marshall. If the car had been at the bottom of the pit, it would have been perfectly safe for him to do so. He had himself let the car to the bottom of the pit only a few minutes before. If he was aware that the car had been hoisted by revolving the shaft, he would have been guilty of negligence in putting his arm into the drum. If he did not know that the drum had been revolved and the car drawn up, but supposed that the car was still in the bottom of the pit, then his negligence would not be so apparent; and it cannot be said, beyond all question, that he was guilty of negligence in putting his arm into this drum without ascertaining or inquiring whether the car had been drawn up the incline a short distance or not. It appears to me to be a debatable question, and, under all the circumstances, is not so plain that I can declare it to be negligence, as matter of law. Fox testifies that he did not know that the drum had been revolved, and says that it was not done after he arrived in the engine-house. Johnson testifies that it was done before Fox came. His testimony is not very clear as to the precise time, and seems somewhat contradictory. Marshall testifies that Fox knew that the drum had been turned so as to bring the key upon the upper part of the shaft of the automatic wheel, and also that he did not know that Fox had his arm inside of the drum. Here was a conflict of testimony, and the jury was the proper tribunal to ascertain what the fact was from the testimony. I think the question of plaintiff's contributory negligence was one for the jury.

The witness Ford was inquired of, upon cross-examination, as to where the stockholders resided, for the purpose of showing that this branch of the business at

Bangor was run largely by persons who were not members, stockholders, or officers. This was objected to as immaterial. The circuit judge permitted the questions to be asked. The testimony had a remote bearing upon the authority reposed in Marshall to keep the machinery in repair. Corporations must act through agents, and it is immaterial whether the agent, if duly authorized, is a stockholder or not. In operating a plant of this kind, some one at the furnace must have authority, or, at least, it must be the duty of some one, to keep the machinery and appliances in repair, and, in the absence of the officers and corporators, it may be inferred that a servant who assumes to and does discharge that duty is the representative of the corporation in so doing.

At the close of plaintiff's testimony counsel for defendant stated to the court orally that he demurred to the plaintiff's proofs, and asked the court to direct a verdict for the defendant, for certain reasons stated. The practice of requesting the court to direct a verdict at the close of the plaintiff's case is not one to be commended, as the circuit court would rarely, and never except in a very plain case which was free from all doubt, grant such motion. The practice of demurring to the evidence is laid down in Gould, Pl. pt. 2, chap. 9, and the demurrer is required to be in writing, with certain formalities, and will only be entertained after admissions are made on the part of the demurring party that will settle all questions of fact, and leave nothing but a pure question of law to be decided. Although the practice has gone into disuse in this State, yet a practice has been recognized that the defendant may, at the close of the plaintiff's testimony, move the court to direct a verdict for defendant. The motion should not be granted where there are any inferences of fact to be drawn by a jury

from the testimony, and the motion was properly over-ruled in this case.

The judgment must be affirmed.

MORSE, McGRATH, and LONG, JJ., concurred with CHAMPLIN, C. J.

GRANT, J. *(dissenting).* I think it was error to permit the residence of the stockholders to be shown. It could not affect the question of agency.

I express no opinion on the other questions involved.