BALHOFF *v* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT — SAFE PLACE — INJURY TO RAILROAD EMPLOYÉ.

Plaintiff's intestate, a brakeman in defendant's employ. was killed by the derailment of a car that was being backed upon a side track, caused by the formation of ice on the tracks at a point where there was a slight depression in the roadbed. *Held*, that it was the duty of defendant to provide a track which, measured by the standard of good railroading as actually conducted, could be said to be reasonably safe, and that whether it had complied with such duty, or whether it should have foreseen the danger of water freezing over the tracks, and adopted sufficient measures to prevent it, was, under all of the circumstances, a question for the jury.

2. SAME—ASSUMPTION OF RISK.

It was also for the jury to say whether the decedent knew or should have known of the existence of the depression in the track, and should therefore be held to have assumed the incident risks, the fact not being undisputed.

3 SAME—PROXIMATE CAUSE.

The fact that a box drain, which had been constructed to carry off the water, had frozen up, thus permitting the water to accumulate and freeze over the rails, cannot be said to have been the proximate cause of the accident, as distinguishable from a defective construction of the track, since the adequacy of the drain in view of probable conditions was one of the questions entering into the determination as to whether a reasonably safe place had been provided.

4. SAME—NEGLIGENCE OF SECTION MEN—FELLOW-SERVANTS.

> The duty to furnish a safe place was one that could not be delegated by the defendant so as to relieve itself from responsibility, and therefore, though it may have been within the employment of the section men to remove the ice from the track, they were not fellow-servants of the deceased with respect to the performance of such duties. GRANT, J., dissenting.

5. SAME—CONTRIBUTORY NEGLIGENCE.

> Whether a brakeman, in sitting upon a flat car between two tiers of logs while backing upon a side track for the purpose of making a coupling, was guilty of contributory negligence precluding a recovery for injuries sustained by being crushed between the logs on the car's leaving the track, is a question for the jury, the evidence being conflicting as to the danger of the position.

Error to Bay; Hosmer, J., presiding. Submitted June 18, 1895. Decided October 1, 1895.

Case by Margaret Balhoff, administratrix of the estate of George Balhoff, deceased, against the Michigan Central Railroad Company, to recover damages for negligently causing the death of her intestate. From a judgment for plaintiff, defendant brings error. Affirmed.

*E. A. Cooley (Henry Russel* and *Ashley Pond,* of counsel), for appellant.

*McDonell & Hall,* for appellee.

HOOKER, J. The plaintiff's intestate, her husband, was killed upon defendant's railroad, under the following circumstances: He was acting as a brakeman upon a freight train, a portion of which was being backed upon a siding for the purpose of making a coupling to some cars standing thereon, after having been coupled to two flat cars loaded with logs. After making the coupling to the flat cars, the deceased sat upon one of them, between two piles of logs, and was killed by the train's leaving the track and striking another car, which caused the logs to shift and crush him. The intestate had been engaged as

brakeman upon the way freight for two months or more, and was familiar with the road. The accompanying sketch will serve to illustrate the situation:

At A and B, where the car left the track, was a depression, towards which the water ran from both north and south. There is nothing to indicate that the depression was great, and it is claimed by the defendant to have been so slight as to require a level to detect it. Towards the east side of the yard was an open ditch, parallel with the tracks, between sidings 3 and 4, and there was another between the main track and the side track on the west side of the grounds. There was a sluice, consisting of a box eight inches in diameter, which was constructed to take the water, which came down upon and between the tracks, to the ditch; said sluice being lower than, and running under, side track No. 4. The sluice was constructed in the fall of 1892 by the section men. On January 29, 1893, the snow and ice melted, and water accumulated in the low spot mentioned, covering the rails. It did not run off, because the box drain was frozen. The following night was cold, and the water froze, and a light snow fell, covering the ice. At 2 p. m. on January 30th the accident occurred, the train being thrown from the track by reason of the ice. There was testimony that the section men did not know that the box was frozen or the track covered with ice, not having reached that place in the due course of their daily labor, and that when they reached it they found it (*i. e.*, the box) frozen solid, and it remained so all winter.

It is claimed by the counsel for the plaintiff that the defendant was negligent, in that it did not fill up the depression and lift the track up, so as to prevent the accumulation of water and ice, or notify its employés of the danger existing at the place, by personal notice, or by a notice posted at the place of danger. The circuit judge allowed the case to go to the jury, and the plaintiff recovered.

Several questions arise in the case, viz.:

1.  Was the defendant negligent in constructing and

maintaining its road with a depression, without informing its employés?

2. Did the intestate assume the risk, as incident to his employment?

3. Was the alleged negligence the proximate cause of the injury?

4. Was the freezing of the track due to the negligence of the section men, and therefore that of a fellow-servant?

·5. Was the intestate guilty of contributory negligence?

1. *The Condition of the Track:* We may properly take judicial cognizance of the fact that it is impracticable to construct railroads upon a level. Indeed, most roads in this country are built upon a succession of inclines, in approximate conformity to the natural surface of the ground. We may also recognize the palpable necessity for rapid drainage of roadbeds, which is usually effected by raising the ties and track above the general surface, and the propriety of ballasting the track in such a manner as to prevent water from running across it, between the ties. In a yard where there are two or more tracks, it follows, of necessity, that water may accumulate between the tracks, and that whether provision should be made for its removal may depend upon the quantity of water likely to accumulate, and the facility with which it naturally escapes. Again, we know that during a thaw snow drifts form barriers, and that water finding its way into drains may freeze there from such cause, and this may happen to a drain that is amply large for ordinary occasions. We cannot, however, say, as a legal proposition, when a drain is necessary, or whether it is sufficient, or to what extent the railroad company should foresee the danger of water rising above the tracks and freezing, and take measures to prevent it. The rule is that the company must provide a reasonably safe track,—one which, measured by the standard of good railroading as actually conducted, can be said to be reasonably safe. If such standard would require the danger of ice freezing over the track to be foreseen, then it was the duty of the company to foresee it. If good railroading, as above

interpreted, requires provision to be made to prevent such freezing, to avoid accident, then it would be negligence to omit such provision; and the same rule must furnish the test of the adequacy of provisions made. These are necessarily questions of fact, and cannot be determined by the court, unless the evidence is conclusive and uncontradicted, one way or the other, which is not the case here. Therefore we must say that whether the defendant in this case furnished a reasonably safe place was a question for the jury.

2. *Was the Accident a Risk Incident to the Employment?* We have so often held that one who is employed to work upon a railroad assumes the risks of obvious defects that it is hardly necessary to cite authorities upon the subject. The master has a right to expect the servant to be alert, and make use of his opportunities to learn the dangers of his employment; and, if ignorance of a danger is inexcusable, the employé cannot recover. And there are cases where the testimony is conclusive, and the court may say so. But the fact is not undisputed here. The intestate's actual knowledge can neither be proved nor disproved conclusively, as he is dead. All that is left is to show the surroundings, and from them we cannot say that he knew, or ought to have known, that there was a low place in the track at that point. He may have known it; we might perhaps say that he probably did know it; but it would still be for the jury to determine the fact.

3. *Proximate Cause:* It is argued that the plaintiff should not recover, because the freezing of the box was the proximate cause of the accident. No authorities are cited for such an application of the doctrine of proximate cause. The ice upon the track caused the accident, and that was caused by the thawing and freezing weather, the presence of water, the depression in the track, and the inadequate drainage under the existing conditions. All contributed to make the place unsafe; and, if the defendant can be fairly held to have been negligent in

permitting this condition of the track, there may properly be a recovery. We cannot sustain this contention.

4. *Negligence of the Section Men:* There is little doubt that it was within the employment of the section men to keep this track in a condition for travel. Doubtless they were expected to remove this ice from the track. In fact they did it later. It may be that it can be reasonably said that the drain was adequate for ordinary purposes, and that it was proper for the company to rely upon its section men to remove ice, in such emergencies as this. But, if so, the section men were employed to maintain a reasonably safe track. It is urged that section men and brakemen are fellow-servants, and that for that reason there could be no recovery. The weight of authority is against this claim. The master owes the duty of furnishing a reasonably safe track, and this is a responsibility from which the company is not relieved by confiding the duty of construction or repairs to competent servants. Such are the master's agents, and their negligence is his negligence. They may be fellow-servants of others engaged in making the repairs, but not of those for whose use and benefit they are made. Nor does the fact that the persons making repairs may be employed in fellow service with the injured person, in other work, relieve the master. The duty is one that the master cannot escape by delegating it. For authorities upon this branch of the case, see cases cited in McKinney, Fel. Serv. § 29, and note; *Benzing* v. *Steinway*, 101 N. Y. 547; *Herbert* v. *Railroad Co.*, 3 Dak. 38; *Sanborn* v. *Trading Co.*, 70 Cal. 261; *Capper* v. *Railway Co.*, 103 Ind. 305; *Fort* v. *Railroad Co.*, 2 Dill. 259; *Krueger* v. *Railway Co.*, 111 Ind. 51.

The duty to furnish a safe place to work is asserted in the cases of *Swoboda* v. *Ward*, 40 Mich. 423, and *Smith* v. *Car Works*, 60 Mich. 504. In *Van Dusen* v. *Letellier*, 78 Mich. 492, Mr. Justice MORSE reiterates the doctrine, and asserts that one to whom the duty is delegated represents the master, and is not the fellow-servant of an operative using the place. This doctrine was again asserted in

*Brown* v. *Gilchrist,* 80 Mich. 65, and, as applied to machinery, is laid down in *Morton* v. *Railroad Co.,* 81 Mich. 423, by Mr. Justice CAHILL, who asserts that delegation of the duty will not relieve the master from responsibility. The same is said in the case of *Sadowski* v. *Car Co.,* 84 Mich. 106.   Mr. Justice CHAMPLIN recognized the rule in *Fox* v. *Iron Co.,* 89 Mich. 393. It was applied in *Ashman* v. *Railroad Co.,* 90 Mich. 567, where it was held that the duty of blocking a frog could not be delegated, so as to relieve the company from responsibility. It should be stated, however, that this was a statutory duty. Mr. Justice LONG followed these cases in his opinion in the case of *Roux* v. *Lumber Co.,* 94 Mich. 615, and recognized it in *Dewey* v. *Railway Co.,* 97 Mich. 332.   It has been reaffirmed in the case of *Beesley* v. *F. W. Wheeler & Co.,* 103 Mich. 196, and recognized in both opinions in the case of *Schroeder* v. *Railroad Co.,* 103 Mich. 213.

It would seem that it should be considered as settled in this State that the master must furnish a reasonably safe place, and cannot avoid responsibility by delegating the duty. If this is so, what reason can there be for saying that the trackmen, to whom belongs the labor of keeping the track in repair and safe condition, are fellow-servants of the trainmen, who use it? The reason given is that our decisions hold that section men and trainmen *are* fellow-servants. An examination of the cases will show that in some, if not all, of them, the section men and trainmen were, as a matter of fact, engaged in a common service, and therefore were fellow-servants. Where the section men assist the trainmen in operating the road, as by throwing switches, coupling cars, etc., or the trainmen assist in repairing the road, by taking laborers upon a construction train, and all, in their respective capacities, engage in removing *debris,* or restoring derailed rolling stock to its place upon the rails, they are engaged in a common service, whatever their other general duties may be. Counsel cite us to two cases: *Mich. Cent. R. Co.* v. *Austin,* 40 Mich. 247; *Schaible* v. *Railway Co.,* 97 Mich. 318.

In the former a switchman was thrown from the foot-board of a locomotive by a jerk caused by striking a worn rail. The court held that he had assumed the risk by reason of his employment, being familiar with the road. The court added: "Moreover, the whole fault, if there was any fault in the condition of this track, was due to the neglect, as he himself testifies, of the trackmen, who were engaged in the same common service with himself." The other case was where a section hand was run over by a car shunted along the track, unattended. The court held him guilty of contributory negligence. This court said: "The court was not in error in holding the parties fellow-servants, under the rule laid down in *Peterson* v. *Railway Co.*, 67 Mich. 109, and the cases there cited; but it was error to hold the acts of the trainmen negligent *per se*, and state to the jury that the company could be held liable to the plaintiff for the acts of his fellow-servants, even though those acts were negligent." At the time of the accident the injured servant was at work clearing the track. In the Peterson case a car repairer was engaged under a car, in inspecting it. He was injured by reason of the negligence of the boss of his gang. This case cites the following: *Mich. Cent. R. Co.*, v. *Dolan*, 32 Mich. 510, where an engineer was injured through neglect of his conductor. In *Smith* v. *Potter*, 46 Mich. 258, a brakeman was hurt through neglect of a train inspector. *Quincy Mining Co.* v. *Kitts*, 42 Mich. 37, was a case where the negligence of a mining captain caused injury to a man under him. *Harrison* v. *Railroad Co.*, 79 Mich. 409, was similar in principle. In *Greenwald* v. *Railroad Co.*, 49 Mich. 197, a brakeman was injured through the fault of an engineer.

Of all these cases, only two, viz., the Austin and Schaible cases, can be said to militate against the rule mentioned. The latter did not involve the question of the master's duty to furnish a safe place, for, if either of the employés involved in the transaction was the one to repair the track, it certainly was not the offender.

Whether it can be said that they were engaged in common employment at the time is another question, which we need not discuss. In the Austin case, however, it would seem that the service was not common, and the duty of the trackmen was to keep the road in repair. The case was put on other grounds, however, which were sufficient to dispose of it. In *Loranger* v. *Railway Co.*, 104 Mich. 80, it was said that the brakeman and section men were fellow-servants; but in that case it was stated that the roadbed was safe, but that, in using it, it was rendered temporarily unsafe, implying that the removal of ashes and cinders by section men was a part of the operation, rather than repair, of the road. The case of Austin, then, is the foundation, and all of the foundation, upon which this exception ( for it is an exception, if defendant's contention shall be upheld) to the general rule must rest. No good reason is suggested for holding that the servants who keep factories and other places in repair shall be governed by different rules than those who repair railroad tracks; and we think that this case was not supposed to conflict with such rule, which has been so frequently announced, and perhaps it did not. We cannot say that it did without knowing the extent of the admission of the plaintiff, alluded to by the court, in that regard.

5. The remaining question is that of contributory negligence. We cannot take judicial notice that it is negligent for a person to sit between two piles of logs upon a car, when riding upon a siding, where he expected to get off to make a coupling before reaching another car. If we are to say that this was contributory negligence, it must be for the reason that the evidence conclusively shows it to have been such. Several witnesses testified to their opinions in the matter, which, as they were expert railroad men, they might properly do, and the opinions were quite uniform that it was unsafe. The witnesses who testified upon this subject were called on behalf of the plaintiff.

Robert Reed, a fellow brakeman, who saw the accident said:

"The effect of the log car striking the box car was to drive the two tiers of logs together, and Balhoff was caught. He sat on the car between the two tiers of logs."

Joseph Carse, conductor of the train, said:

"I would not consider it safe for Balhoff to sit down between the tiers of logs on the car, when backing in for the purpose of making the coupling with another car. I should regard it as an extremely dangerous place. * * * I would not consider it safe for him to take the position he did, when making up trains. The car is liable to jump the track any place. It is liable to run over something when you are switching.

"Q. Is it not a usual mode, in making up trains, to ride on the cars?

"A. Sitting down? No, sir.

"Q. In either way, would any danger arise, except the car jumped the track, or ran into a car, as this did?

"A. If a log would roll off the tier ahead of him, it would be liable to catch his feet. I have seen logs roll off from cars standing still. It is not very customary. I have seen them roll off when the cars were moving slowly."

W. J. Martin, division superintendent, testified:

"My experience makes me familiar with the method of handling different trains, including log trains. From my experience, I should say that it was not a safe place for a man to occupy, or a safe thing for a man to do, to sit down on the deck of a flat car, between two tiers of logs loaded on a car, when that car was being backed into a side track in midwinter. A car is liable to jump a track, if they should strike another car hard. The logs are liable to shove and come together, especially in the winter. If you strike the car hard, the logs will shove from one end to the other. That has been our experience, and there is no question about it. * * * There is no place on any car that is absolutely safe. I should consider it reasonably safe for a man to stand on the end of a car loaded with logs, or more safe on top of the logs. Of course, if the logs broke away, you are liable to fall off, and to be let down in the logs.

"*Q.*  Wouldn't you consider a man safer at a distance of two feet from the ground than ten?

"*A.*  That depends upon circumstances.  In this particular place, I would not.

"*Q.*  You base this largely upon the fact that an accident happened?

"*A.*  It is not a safe place for any man to ride,—between two tiers of logs."

Donald McDonald, a brakeman, testified:

"Sometimes, in making a coupling of cars loaded with logs, if they strike awful hard, the logs will slide endwise. I had a little experience of logs sliding in that way.  A short time ago, on the Hauptman Branch, I made a coupling, and the logs slid four or five inches.  They were slippery logs, out of the lake.  They slid endwise.  In my judgment, I should not think it was a very safe place for Balhoff to be sitting down on the body of the car, between the two tiers of logs, backing into this switch. Of course, it is according to how fast they were going.

"*Q.*  In the ordinary experience of backing into a side track in that way, for the purpose of making a coupling to some other cars, was that a safe place for him to occupy. in your judgment as a railroad man?

"*A.*  I should not think it would be very safe in there.  *  *  *

"*Q.*  Now, in the ordinary way of operating a train, in making it up, do you say that that was not a safe place for Mr. Balhoff to get?

"(Objected to by counsel for defendant, as leading, and the very tone of voice in which it is put is trying to coax an answer favorable to counsel.)

"*Mr. Hall:*  I take an exception to that remark.

"(Objection overruled, to which ruling counsel for defendant excepted.)

"*A.*  I don't know as it is very unsafe or very safe.  Of course, we all do it, I suppose,—jump on leisurely when a car comes along, and ride up to the other one, and jump off and couple it.

"*Q.*  You spoke of its being unsafe by reason of the logs coming together with a sudden jerk?

"*A.*  Yes, sir.

"*Q.*  Or in case of accident.  In the ordinary way of switching cars, would there be any liability of that kind of danger?

"(Objected to by counsel for defendant as incompetent, immaterial, and leading. Objection overruled, to which ruling counsel for defendant excepted.)

"*A.* I should not think there would."

This is all of the testimony upon the subject. There was an abundance of evidence that it was unsafe, but the testimony of the last witness named was such as to make it a question for the jury.

Complaint is made of the charge, viz.:

"Now, gentlemen, we will proceed to another branch of the case. What opportunity was there for the brakeman, Mr. Balhoff, in this case, to have discovered the condition of the track? You have heard the testimony with reference to the snow. If you find, gentlemen, that, by the exercise of diligence on his part, he himself should have discovered the condition of the premises at that time,—in other words, if his knowledge was such knowledge as the company had, or you might find ought to have had,—then it was one of the risks that he took upon himself, because, while it was not a risk, perhaps, that might have been originally embraced in his contract with the company— We will revert to the example of the mowing machine, which will illustrate what I mean. We will suppose the pole to have been broken, and that the employé knew that the pole was broken. If, under those circumstances, the employé took the machine, and went to mowing, he would take the risk of accident from its breaking upon himself, because he knows precisely just all the dangers, just as does the farmer whose machine it is. So I say to you, if Mr. Balhoff knew, or might have known from looking upon the ground at that time, of the existence of the danger, then, and under those circumstances, the company would not be liable, no matter what you may find upon the proposition with reference to which I have just spoken."

We think this instruction not open to objection.

No error appearing, the judgment must be affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred with HOOKER, J.

GRANT, J.   I concur in the result reached by my Brother HOOKER, but I cannot concur in his reasons therefor.   The theory of the declaration is a defect in the original construction of the road, of which the defendant had knowledge, and the deceased had not.   Upon this theory the case was tried, and submitted to the jury. The track upon which the accident happened was constructed in a basin,—of slight depth, it is true, but deep enough to permit the water to collect above the rail.   It will not be seriously contended that such a construction is safe, in this latitude,—subject as it is, in winter, to sudden thaws and freezing.   There is evidence that the attention of the defendant was called to this defect, and it attempted to remedy it by a sluiceway, which proved insufficient in a case of sudden thawing and freezing. Railroads must be constructed with reference to the elements in winter as well as in summer.

Counsel for plaintiff state the basis upon which they sought recovery in the following language:

"If the servant claims damages from the master for injuries received on account of defective premises, buildings, machinery, or appliances, he must allege and prove that the unfitness or defect was either known to the master, or was such that, with reasonable diligence and attention to business, he should have known of it; and, if defendant is liable in this case for the defect in its yard, it must be because it was defective when constructed, or became and remained so afterwards, under circumstances that called for knowledge on its part, arising either from the insufficient means taken to guard against danger, or the existence of the cause that produced the injury for such a length of time that it ought to have known of it."

The closing instruction given by the court to the jury at defendant's request is as follows:

"If the accident occurred by reason of a defect in the original plan or construction of the side track or yard, and if such side track and yard was originally constructed so as to be reasonably safe for the ordinary uses of a side track and yard, the plaintiff cannot recover."

When the cause of an accident is an original defect in construction, for which the defendant is liable, or the failure to remedy a defect of which he had either actual or constructive notice, it is no defense to an action for resulting damages that it was the duty of a fellow-servant to look after the track and remove obstructions. The original defect in such a case is the proximate cause of the accident, not the neglect of the fellow-servant. In my judgment, therefore, the question of fellow-servant is not involved in the case, and was properly excluded from the jury. The justice of this rule, as applied to the present case, appears from the fact that the section men were engaged in other work and duties upon the track over which they had charge, and had not had time to investigate this track and prevent the accident. A railroad company cannot thus shift the responsibility of its own knowledge of a defect upon its employés, in a case where it had given no specific instruction, nor informed them of conditions which the elements might produce. This is not the case of an obstruction suddenly placed upon the track, or of a sudden defect in the roadbed, without the fault of the defendant, and for which it is not liable unless it had had actual or constructive notice. For these reasons, I think the case was fairly and properly submitted to the jury. I cannot concur in what my brother has said upon the doctrine of fellow-servants, for reasons stated by me in *Anderson* v. *Railroad Co.,* (December 24, 1895; 107 Mich.) 65 N. W. Rep. 588.