WICKHAM *v*. DETROIT UNITED RAILWAY.

1. MASTER AND SERVANT—SAFE PLACE—STREET RAILWAYS—NEG·
LIGENCE OF FELLOW-SERVANT.

> The act of a co-employé of defendant's conductor in tempo-
> rarily leaving a wheelbarrow so near the street car track that
> it struck the plaintiff who was collecting fares on the run-
> ning board of the car, is not a breach of the master's duty to
> provide a safe place.

2. SAME.

> While the master is liable for failure to provide a safe place to
> work or reasonably safe appliances, it does not follow that
> he can be held responsible for the transitory negligent act of
> a co-employé of the plaintiff in using a proper tool or instru-
> mentality, where the master could have had no knowledge
> of the negligence.

Error to Wayne; Murphy, J. Submitted February 10,
1910. (Docket No. 131.) Decided March 5, 1910.

Case by Fred L. Wickham against the Detroit United
Railway for personal injuries. A judgment for defendant
on a verdict directed by the court is reviewed by plaintiff
on writ of error. Affirmed.

*Proctor K. Owens* and *Lehman, Riggs & Lehman*,
for appellant.

*Brennan, Donnelly & Van De Mark*, for appellee.

STONE, J. This is an action on the case for damages
for a personal injury to the plaintiff. On June 30, 1906,
the plaintiff was a street car conductor in the employ of
the defendant. He was 35 years old, and had acted as
conductor over 5 years. On the day in question he went
on duty at the Dix avenue car barn about noon. He was
conductor on what was known as the " Baker line," which
extends from said car barns to the railroad track on North

Chene street. At the time of the injury, the plaintiff's car was running in an easterly direction along Dix avenue between Scotten and Hubbard avenues. It was an open car, with seats extending entirely across it, and, in the discharge of his duties, he was required to be on a running board extending along the right-hand side of the car. He was on the south side of the car. Immediately before he was injured, the plaintiff was collecting fares, which required him to look north, or into the car. While thus engaged his legs came in contact with a loaded wheelbarrow, a part of which extended over the running board of the car, and his feet were knocked from under him. He fell upon the pavement, and sustained the fracture of two ribs and other injuries. On the day and at the place in question, the sectionmen of the defendant were engaged in repairing the tracks, and the facts showed that while these repairs were in progress a wheelbarrow loaded with brick was left at such a point upon the pavement that, when the car in question came along, a collision between the wheelbarrow and the car occurred. The only reasonable inference is that the wheelbarrow was left temporarily in the position in which it was by one of the sectionmen of the defendant. Upon the close of plaintiff's case the trial judge directed a verdict for the defendant, on which ruling error is assigned by the plaintiff, and the case is here upon writ of error.

As we understand the plaintiff's position, no claim is made that the wheelbarrow which caused the injury had been left in the position in which it was at the time the injury occurred for a sufficiently long time to give the defendant constructive notice of its presence, and no claim is made that any of the servants of the defendant were incompetent, and, no defect in the roadbed nor instrumentalities furnished the defendant's servants appearing, we come to the question of defendant's liability.

The learned circuit judge, in his charge directing a verdict for the defendant, said:

   "It, perhaps, is a reasonable inference to say from the

proofs—reasonable at least for the purpose of this motion —that the wheelbarrow was left in the position in which it was at the time of the collision by one of the defendant's employés. Now, gentlemen of the jury, was the act of that employé in placing that wheelbarrow where it would come in collision with a passing car the act of the defendant company? It had provided a safe place for the plaintiff here to work when it gave him a proper car, and when it provided for the operation of that car a proper roadbed. Was that safe place so provided made unsafe by the act of the workmen in leaving that wheelbarrow where it would overlap an approaching car? That is to be answered, probably, in the affirmative. The act of the workman in that respect in leaving that wheelbarrow in that precise position was an act of negligence on his part. But was it such an act of negligence as makes the defendant company responsible for the workman's misconduct? In my view that question must be answered negatively. Why? Bearing in mind that the roadbed was a safe place, any change in its condition which made it unsafe grew out of the temporary act of that workman leaving that wheelbarrow in that particular position. The danger arose, not from any permanent condition of that track, but grew out solely and alone of a transitory act of a workman while engaged in repairing the track. * * * There is nothing in this record from which it could be inferred that that wheelbarrow had been there for any length of time; for all that this proof shows that wheelbarrow may not have been there for a minute at the time that car approached. Consequently there can be no claim that the defendant company knew that the wheelbarrow was there. Nor can there be any claim that the wheelbarrow, in point of fact, had been there sufficiently long so that the company should have ascertained its presence. These features are not present in this case."

To support his position, the plaintiff has cited a large number of cases in this court upon the question of the nondelegable duty of the employer to provide a safe place to work, among which is the case of *Balhoff* v. *Railroad Co.*, 106 Mich. 612 (65 N. W. 592). An examination of that case will show that the plaintiff was injured by reason of a permanent defective condition of the track, allowing the formation of ice on the track and rails, and the

question of the defendant's negligence in not foreseeing the probability of such a condition, from the attending circumstances, was left to the jury. Justice GRANT, in a concurring opinion in that case, said:

"This is not the case of an obstruction suddenly placed upon the track, or of a sudden defect in the roadbed, without the fault of the defendant, and for which it is not liable unless it had actual or constructive notice."

We think that the numerous cases cited by the plaintiff can all be distinguished from the case at bar. We have not the space here to notice all of them.

*Sadowski* v. *Car Co.*, 84 Mich. 100 (47 N. W. 598), involved the failure of the defendant to furnish a safe place to work, and the negligence consisted in leaving a ditch, which had been dug the night before, unguarded, the digging of which had been performed under the direction of a vice principal of the defendant.

*Gillespie* v. *Railway Co.*, 150 Mich. 303 (113 N. W. 1116), involved the failure of the defendant company to remove gravel from between and outside its rails, the same having been allowed to remain there for a period of from two to four days. The question of notice was also in the case.

*McClarney* v. *Railway Co.*, 80 Wis. 277 (49 N. W. 963). We do not think that this case is in point, as the negligence of the defendant consisted in allowing old snow and ice to accumulate on the tracks. The court said:

"This condition of things had continued nearly all winter, and snow-between the tracks was piled up to the depth of two or three feet. * * * The learned circuit court held, and, as we think, properly, that, if the accident was caused by the new fallen snow of the previous night, no negligence could be imputed to the company for not having removed it, because it had not had a sufficient time to do so before the accident."

We think that there can be no question as to the law in this State in a case like the one presented in this record. The authorities cited by the plaintiff relate to the rule that

the master, in the performance of the nondelegable duty of providing a safe place for his employés to work, cannot invoke the defense of fellow-servant to evade liability. This is a sound doctrine when applied to situations where the master has failed to provide a reasonably safe place to work, or has failed to supply reasonably safe appliances. It does not follow, however, that the employer can be held responsible for the transitory negligent act of a co-employé of the plaintiff, which negligence occurs in the use of a proper tool or instrumentality in a negligent manner, where the defendant, in the nature of the case, could have no knowledge of the condition, or the act of the fellow-servant. Had the plaintiff been injured by a defective condition of the roadbed upon which the car was traveling at the time of the injury, or had the defendant company provided unsafe instrumentalities for the use of the sectionmen in the work of repairing the track, there would be force in the plaintiff's claim. We have held that where a master provides a reasonably safe place for his servant to work, and has provided reasonably safe appliances with which to work, and provides reasonable inspection to see that the instrumentalities and premises are kept in a reasonably safe condition, he has fulfilled his obligation to his servant. The master, however, is not an insurer for the negligent transitory act of a workman who uses an admittedly safe appliance in a negligent manner. *Miller* v. *Railroad Co.*, 123 Mich. 374 (82 N. W. 58). In the case cited the foreman of a section gang was injured by the improper loading of a freight car by its crew. There was also the negligence of the station agent in failing to properly inspect the loaded car. A timber projected from one of the cars and struck the section foreman, who was working with his men surfacing the track of the defendant company. Justice MOORE, in an opinion reversing a judgment for the plaintiff, said:

"The trial judge was in doubt as to whether he ought to have charged the jury that the conductor and the station agent, who were responsible for the loading of the

timber, were fellow-servants with the plaintiff or not.    He expressed himself as of the opinion that the cases decided in this court were not harmonious, and that under the later cases he ought to allow the case to go to the jury. He doubtless referred to the cases of *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592); *Anderson* v. *Railroad Co.*, 107 Mich. 591 (65 N. W. 585); *McDonald* v. *Railroad Co.*, 108 Mich. 7 (65 N. W. 597).    A reference to these cases will show that each of them announced the doctrine that it was the duty of the master to provide a reasonably safe place to work, and machinery, tools, or appliances in a reasonably safe condition with which to work, and that this was a duty which could not be delegated by the master, so as to escape liability.    If the master has provided a safe place to work, or tools, machinery, and appliances reasonably safe with which to work, these cases do not indicate that the negligent use of these things by a fellow-employé would make the master liable.  These cases, as applied to the testimony in the case at bar, restricted as it was by the court to the third count in the declaration, did not justify a submission of the case to the jury upon the theory that the station agent and conductor were not fellow-servants.    In that respect the case is controlled by *Dewey* v. *Railway Co.*, 97 Mich. 329 (52 N. W. 942, 56 N. W. 756, 16 L. R. A. 342, 22 L. R. A. 292, 37 Am. St. Rep. 348); *Jarman* v. *Railway Co.*, 98 Mich. 135 (57 N. W. 32); *Loranger* v. *Railway Co.*, 104 Mich. 80 (62 N. W. 137); and *Frazee* v. *Stott*, 120 Mich. 624 (79 N. W. 896).    The last-named cases all relate to the negligent use by fellow-servants of cars, machinery, or appliances which were reasonably safe for the purposes for which they were intended. Under such circumstances, it is held that the negligence of the fellow-servant does not make the master liable.    If the distinction we have pointed out is borne in mind, we think it will be found the decisions are not inharmonious."

In *Loranger* v. *Railway Co.*, *supra*, it was held that a brakeman and sectionman are fellow-servants, and Justice GRANT, speaking for the court, in passing upon the question of the duty of the master to provide a safe place, employed the following language:

"The defendant had furnished a good roadbed, and in this respect had done its duty in furnishing a safe place.

It was rendered unsafe temporarily by the act of a fellow-servant. In order to bind defendant, actual notice of the obstruction must be shown, or it must be shown to have existed for such a length of time that the law will imply notice. Neither is shown or claimed. This is another attempt to avoid nonliability for the acts of a fellow-servant by invoking the doctrine of a safe place. *Jarman* v. *Railway Co., supra,* and authorities there cited; *Pittsburgh, etc., R. Co.* v. *Adams,* 105 Ind. 163 (5 N. E. 187)."

A strong case in point is that of *Haskell & Barker Car Co.* v. *Przezdziankowski,* 170 Ind. 1 (83 N. E. 626, 14 L. R. A. [N. S.] 972, 127 Am. St. Rep. 352).

In the case at bar the trial court clearly pointed out why the defendant is not liable to the plaintiff, and distinguished the situation here, where the negligent act is a transitory, momentary one, occurring from the very work of making the premises safe, by improper use of a safe appliance, from the position taken by the plaintiff.

We find no error in the record, and the judgment below is affirmed.

OSTRANDER, McALVAY, BROOKE, and BLAIR, JJ., concurred.